**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HERSHEL OSCAR ROSENBAUM; C. R.;
J. R.,
          *Plaintiffs-Appellants,*

v.

WASHOE COUNTY; DENNIS BALAAM,
in his official capacity; MICHAEL
HALEY, in his official capacity;
JAMES FORBUS, in his individual
capacity,
          *Defendants-Appellees.*

No. 10-15637

D.C. No.
3:08-cv-00418-ECR-
RAM

OPINION

Appeal from the United States District Court
for the District of Nevada
Edward C. Reed, Senior District Judge, Presiding

Argued and Submitted
May 11, 2011—San Francisco, California

Filed August 22, 2011

Before: Ronald M. Gould and Milan D. Smith, Jr.,
Circuit Judges, and Nancy Gertner, District Judge.*

Opinion by Judge Gertner

---

*The Honorable Nancy Gertner, U.S. District Judge for the District of
Massachusetts, sitting by designation.

11379

## COUNSEL

Robert R. Hager and Treva J. Hearne, Hager & Hearne, Reno, Nevada, for the appellants.

David Creekman, Herbert Kaplan, Washoe County District Attorney's Office, Reno, Nevada, for the appellees.

## OPINION

GERTNER, District Judge:

Hershel Oscar Rosenbaum ("Rosenbaum") and his children appeal the district court's order granting the defendants' motion for summary judgment on the grounds of qualified immunity.

Rosenbaum was arrested as he stood outside a fair selling promotional tickets that he had received for free from a radio station. He was wearing a t-shirt with the logo of the station; his children, ages eight and four, were standing beside him. He was arrested for abuse, neglect or endangerment of a child, and obtaining money under false pretenses. Officers walked his children across the street to the car where their mother was waiting. On the way, they told the children that what their father did "was wrong," that "you know what your father did was wrong," and that he was going to jail for what he had done. Rosenbaum spent eight hours in jail and was released on bail. He had in fact not violated any statute. There is no scalping law in Nevada; no other charge applied to his conduct. The charges against him were ultimately dropped.

Rosenbaum and his children brought a § 1983 suit against Washoe County, County Sheriff Dennis Balaam, County Deputy Sheriff Lieutenant James Forbus ("Forbus "), and Undersheriff Michael Haley, for damages resulting from the unlawful arrest. They claimed a violation of two constitutional rights: (1) the right to be free from unlawful arrest under the Fourth and Fourteenth Amendment, and (2) the substantive and procedural due process right to family integrity under the Fourteenth Amendment. They also brought state claims for libel, assault, battery, negligent and intentional infliction of emotional distress, false arrest, and false imprisonment.

The County defendants moved for summary judgment on the grounds of qualified immunity, and the district court granted the motion. The district court held that while the arresting officer, Forbus, did not have probable cause to arrest Rosenbaum, he was entitled to qualified immunity because a criminal statute, "collecting for benefit without authority," Nev. Rev. Stat. § 205.415, which was offered by the defendants to justify the arrest, was ambiguous.

Significantly, the statute on which the district court relied in finding qualified immunity was unknown to Forbus at the time of the arrest. It has no published authority or legislative history. While there is a factual dispute about *when* the County defendants found this statute, it is clear that it was found at some point *after* the arrest and even *after* Rosenbaum was released. The Rosenbaums allege that it was the district attorney who found it after this section 1983 case was brought, almost two years after the arrest. The County defendants claim that it was Officer Forbus who found the statute. A Westlaw search of Nevada law found not a single reference to this statute other than in this case.

The district court further held that while the officer's comments to the children were offensive, they did not rise to the level of a constitutional violation.

For the reasons that follow, we reverse the district court's ruling on qualified immunity for the unlawful arrest and affirm the district court's ruling on the right to integrity of the family.

## BACKGROUND

Rosenbaum received free promotional tickets for the Nevada State Fair from the Reno radio station KOZZ. On August 26, 2006, Rosenbaum stood across the street from the entrance to the fair with his children and sold the tickets for the discounted price of $5 per ticket. He was wearing a t-shirt with the KOZZ logo at the time.

Deputy Sheriff Forbus responded to a complaint by fair personnel that an individual was attempting to sell free promotional tickets. He spoke with KOZZ, the radio station that distributed the free tickets and sponsored the event, and was told that no one had been authorized to sell tickets for a profit. He then spoke with three witnesses who had bought tickets from Rosenbaum. He called for back up and approached Rosenbaum. Rosenbaum first denied and then admitted to selling the tickets. Forbus placed him under arrest.

Rosenbaum's two children were escorted to their mother, who was in a parked vehicle a short distance away. Forbus— and perhaps other officers—told them that what their father had done "was wrong," that "you know what your father did was wrong," and that their father was going to jail for what he had done.

Rosenbaum was booked on felony charges for abuse, neglect, or endangerment of a child and for obtaining money by false pretenses, as well as on a misdemeanor charge for obtaining money under false pretenses. He was released on bail the following day. The Washoe County District Attorney's Office would later charge Rosenbaum only with one

felony count of obtaining money by false pretenses and then drop the charge.

This lawsuit was filed on August 1, 2008. The Rosenbaums' complaint asserts nine causes of action: (1) False Arrest, Unlawful Detention, False Imprisonment and Malicious Prosecution Pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (2) Violation of Substantive and Procedural Due Process Right to Familial Integrity, and of Liberty Interest to Rear Children Without Unreasonable Government Interference; (3) Libel (based on a August 26, 2006, press release requesting information about Rosenbaum and the sale of the tickets); (4) Libel (based on a August 31, 2006 press release); (5) Assault; (5) Battery; (6) Intentional Infliction of Emotional Distress; (7) Negligent Infliction of Emotional Distress; (8) False Arrest; and (9) False Imprisonment. They seek damages in an amount in excess of $10,000 on each of these causes of action.

The County defendants moved for summary judgment on July 10, 2009. The district court granted summary judgment on the grounds of qualified immunity in an unpublished decision on February 25, 2010. *Rosenbaum v. Washoe County*, No. 08-418, 2010 WL 745451 (D. Nev. Feb. 25, 2010). Having dismissed the federal claims, the district court declined to exercise jurisdiction over the pendent state claims. *Id.* at *8. The Rosenbaums appealed to this court on March 23, 2010.

## STANDARD OF REVIEW

This court reviews a district court's ruling on summary judgment on the grounds of qualified immunity *de novo*. *McSherry v. City of Long Beach*, 584 F.3d 1129, 1134 (9th Cir. 2009), *cert. denied*, 131 S. Ct. 79 (2010). Summary judgment will be granted—or affirmed—where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks and citation omitted); Fed. R. Civ. P. 56. In making this determination, we will consider all of the facts in the light most favorable to Rosenbaum. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

## DISCUSSION

**[1]** The court applies a two-prong analysis to determine whether officials are entitled to qualified immunity: (1) whether the facts alleged show that the officer violated a constitutional right; and (2) if so, whether that right was clearly established at the time of the event. *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). These two questions may be considered in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The linchpin of qualified immunity is the reasonableness of the official's conduct. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the *objective legal reasonableness* of the action, assessed in light of the legal rules that were clearly established at the time it was taken." (emphasis added) (internal quotation marks and citations omitted)).

In this case, the Rosenbaums allege that the officials violated two constitutional rights: the right to be free from unlawful arrest and the substantive due process right to family integrity. We will consider each in turn, addressing first whether the right was violated and then whether the law was clearly established such that the official would have been on notice that his conduct was unlawful.

## I.   Unlawful Arrest

**[2]** It is well established that "an arrest without probable cause violates the Fourth Amendment and gives rise to a

claim for damages under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988). An officer who makes an arrest without probable cause, however, may still be entitled to qualified immunity if he reasonably *believed* there to have been probable cause. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009).

In the context of an unlawful arrest, then, the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity. *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (noting that an officer will not be entitled to qualified immunity "if officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause").[1] We will consider each question in turn.

## A.   Probable Cause

[3] An officer has probable cause to make a warrantless arrest when the facts and circumstances within his knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime. *Crowe v. County of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 905, 907 (2011). The analysis involves both facts and

---

[1]To be sure, the application of the qualified immunity doctrine varies with the nature of the right. Some constitutional rights are stated in relatively specific rules. Some, like the Fourth Amendment's prohibition against unreasonable searches and seizures, are not. Allowance for reasonable error is already built into the underlying constitutional standard in the first instance—before a qualified immunity analysis. As such, as one scholar described it, qualified immunity is cast in terms of whether there was "reasonably unreasonable" behavior. *See* John C. Jeffries, *What's Wrong with Qualified Immunity*, 62 Fla. L. Rev. 851, 860 (2010).

law. The facts are those that were known to the officer at the time of the arrest. The law is the criminal statute to which those facts apply.

**[4]** This case raises the question of which criminal statute should be considered in the probable cause analysis. The district court cited *Devenpeck* for the proposition that there will be probable cause so long as the facts known to the officer give rise to probable cause "for *any* criminal offense." *Rosenbaum*, 2010 WL 745451, at *3 (emphasis added) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004)). The district court then analyzed probable cause under three criminal statutes, including one that was found after the defendant was released (and perhaps after this suit was brought), and with which neither Rosenbaum, nor apparently anyone in the statute's history, was ever charged. *Rosenbaum*, 2010 WL 745451, at *4-5. The district court ultimately found no probable cause. *Id.* at *5.

While we do not agree with the district court that the Nevada criminal statute "collecting for benefit without authority" should be considered in evaluating probable cause in this case, we do agree that the facts do not support probable cause for any crime—even under that statute. We first address *Devenpeck* and then turn to each of the offenses offered by the defendants to justify the arrest.

### 1. Limits of *Devenpeck*

**[5]** *Devenpeck* permits retrospective analysis of probable cause. 543 U.S. 153. The Court held that the crime for which there was probable cause need not be the one that the officer stated at the time of the arrest. *Id.* at 154-55. Indeed, according to *Devenpeck,* the offense on which the post hoc analysis is based need not even be closely related to the crime stated by the officer at the time of the arrest or charging. *Id.* at 153-55. It is perfectly permissible for an officer or district

attorney to later determine the appropriate statute under which to charge a defendant.

This case, however, raises a question that *Devenpeck* did not address: While a retrospective analysis of probable cause is appropriate, can an arrest without a warrant be justified after the fact with *any statute*—even one that is so remote and obscure as to not be within any reasonable officer's arsenal of criminal offenses? The district court did not ask or address this question.

The concern in *Devenpeck* was that the constitutionality of an arrest should not depend on the experience of the arresting officer. "The rule that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest," the Court explained, would render the constitutionality of arrests subject to the experience of the arresting officer. *Id.* at 153-54. "An arrest made by a knowledgeable, veteran officer would be valid, whereas an arrest made by a rookie *in precisely the same circumstances* would not." *Id.* at 154. But here it is likely that *no* reasonable officer, no matter how experienced, would have known of § 205.415, "collecting for benefit without authority." There is no evidence that anyone has ever been charged with this crime in Nevada. Indeed, even in this case, once the officials had discovered the crime, Rosenbaum was never charged or prosecuted with it.

**[6]** It cannot be that probable cause for a warrantless arrest exists so long as the facts may arguably give rise to probable cause under *any* criminal statute on the books—even if the crime is buried deep in a dust-covered tomb and never charged or prosecuted. If it were so, officers could arrest without a warrant under virtually any set of facts and later search the legal archives for a statute that might arguably justify it. Such an approach would be inconsistent with the Fourth Amendment's fundamental requirement that searches be cabined by the requirement of reasonableness.

**[7]** To be clear, our holding is narrow: while the crime for which there is probable cause need not be related to the crime for which an individual is arrested without a warrant, the crime must be reasonably within the arsenal of crimes that officers enforce in the state.[2]

### 2. No probable cause for any offense

In any event, in this case, the district court held—and we agree—that the facts known to Forbus did not give rise to probable cause for any offense, even the offense of "collecting for benefit without authority." When Forbus arrested Rosenbaum, he knew the following facts: Forbus had received a complaint by State Fair personnel that an individual was attempting to sell free promotional tickets to the fair. He had spoken with KOZZ, the radio station that distributed the free tickets and sponsored the event, and was told that no one had been authorized to sell the tickets for a profit. Forbus saw Rosenbaum standing with his children, wearing a t-shirt with the KOZZ logo. Forbus spoke with three witnesses who confirmed that they had purchased tickets for $5 each. When he approached and spoke with Rosenbaum, Rosenbaum first denied but then admitted to having sold tickets.

---

[2]We do not imply that no one may be arrested for "collecting for benefit without authority" under any circumstances. Indeed, this case may well have surfaced the offense for future officers. The linchpin of the analysis is reasonableness: if one would have to delve into the depths of the library, after the fact, to find a statute that may possibly apply to the facts, then an officer is not entitled to make the arrest without a warrant.

Such a requirement poses no burden on public safety. It arises in the rarest of circumstances, when little known, or unenforced offenses are used to justify an arrest post hoc. For example, in Michigan, it is a misdemeanor offense to blaspheme the name of God. Mich. Comp. Laws § 750.102. That this offense still exists on the books does not mean that an officer can arrest a man who has otherwise committed no crime and then claim that there was probable cause because he thought he heard the suspect say, "Oh, God."

**[8]** The County defendants acknowledged that there was no probable cause for abuse, neglect or endangerment of a child. They proposed that there was probable cause for two offenses: "obtaining money by false pretenses" in violation of Nev. Rev. Stat. § 205.380 (2005) (now codified at Nev. Stat. § 205.380 (2011)); and "collecting for benefit without authority" in violation of § 205.415 (2005) (now codified at Nev. Stat. § 205.415 (2011)).

### a.   Obtaining money by false pretenses

**[9]** Section 205.380, obtaining money by false pretenses, provides:

> A person who knowingly and designedly by any false pretense obtains from any other person . . . money . . . with the intent to cheat or defraud the other person, is a cheat, and, unless otherwise prescribed by law, shall be punished[.]

The elements of this crime are: the intent to defraud, a false representation, reliance on that representation, and that the victim is defrauded. *Barron v. State*, 783 P.2d 444, 449 (Nev. 1989). In this case, however, there was no evidence to suggest that Rosenbaum intended to defraud his customers or that he was misrepresenting himself. He was openly selling promotional tickets, that he had received for free, for a price of $5. His customers received exactly what they paid for; they were not victims of fraud. This is not a case, for example, where someone was selling counterfeit or fake tickets. The district court held, supported by the record, that these facts do not give rise to probable cause for obtaining money under false pretenses.

### b.   Collecting for benefit without authority

Section 205.415, "collecting for benefit without authority," provides:

> A person who sells one or more tickets to any ball, benefit or entertainment, or asks or receives any subscription or promise thereof, for the benefit or pretended benefit of any person, association or order, without being authorized thereto by the person, association or order for whose benefit or pretended benefit it is done, shall be punished[.]

The County defendants argue that Rosenbaum appeared to be holding himself out as a representative of KOZZ because he was wearing their t-shirt. He appeared, they argue, to be selling tickets *for the benefit* of KOZZ. And because he was unauthorized to do so, he appeared to be violating this statute. This interpretation assumes that the statute makes it a crime to sell tickets for the pretended benefit of another.

[10] The district court, however, interpreted the statute differently. The district court reasoned—and we agree—that the purpose of the offense is to protect charities from fraud. *Rosenbaum*, 2010 WL 745451, at *5. The district court noted that there is no published authority, state or federal, that construes the provision, nor is there any legislative history that clarifies its terms. *Id.* As such, the district court was obliged to predict how the Nevada Supreme Court would have interpreted the statute. *Id.* The district court emphasized the provision's title, "Collecting for benefit without authority," and found that a common-sense reading suggests that the provision makes it a crime to sell tickets to a charity event (ball, concert, or entertainment) without authorization. *Id.* The phrase "for the benefit or pretended benefit of any person" modifies "any ball, benefit or entertainment" instead of modifying the word "tickets." In other words, it is a crime to sell tickets without authorization *to an event that benefits another* rather than to sell tickets without authorization *for the benefit of another. Id.* As such, the facts known to Forbus at the time of the arrest did not give rise to probable cause for "collecting for benefit without authority" because the fair was not a charity event. *Id.*

**[11]** We agree with the district court and conclude that there was no probable cause to arrest Rosenbaum, and his constitutional right to be free from unlawful arrest was violated.

## B.   Reasonable Belief of Probable Cause

**[12]** Even if the arrest was made without a warrant and without probable cause, however, the officer may still be immune from suit if it was objectively reasonable for him *to believe* that he had probable cause. *Ramirez*, 560 F.3d at 1024. The linchpin of the qualified immunity analysis is the reasonableness of the officer's conduct in the particular case at hand. *Anderson*, 483 U.S. at 638. The law acknowledges that an otherwise competent officer will sometimes make an unreasonable decision or make an unreasonable mistake as to law or fact. In those instances, the officer will appropriately be liable under § 1983. *See Liberal v. Estrada*, 632 F.3d 1064, 1078 (9th Cir. 2011) (denying qualified immunity because the officer's mistake of fact was unreasonable).

Framing the reasonableness question somewhat differently, the question in determining whether qualified immunity applies is whether all officers would agree that there was no probable cause in this instance. *See Ashcroft*, 131 S. Ct. at 2083 (holding that an official is not entitled to qualified immunity where "*every reasonable official*" would have understood that he was violating a clearly established right (emphasis added) (internal quotation marks and citation omitted)).³

---

³The Court uses the language "all reasonable officers" or "every reasonable officer" to explain that it must be clear that the conduct is unlawful; qualified immunity will attach whenever reasonable officers could disagree about whether the facts in the particular case give rise to probable cause. The law does not imply, however, that police officers are the ultimate arbiters of constitutional questions. The lawfulness of their conduct does not turn on whether all, or most, officers think that the law is clearly

**[13]** In this case, Forbus does not allege that he made any mistake of fact that would have led to probable cause. Nor does he allege that he misunderstood the law at the time of the arrest. Rather, the district court granted qualified immunity to Forbus on the grounds that a later-discovered statute, that could arguably apply to the facts of this case, is ambiguous. *Rosenbaum*, 2010 WL 745451, at *6.

To be sure, the law must be clearly established such that it would "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223; *see also Ramirez*, 560 F.3d at 1024. The purpose of qualified immunity is to ensure that officers are given fair notice of the law that they are required to uphold. *Anderson*, 483 U.S. at 640.

The lack of clarity of a law of which no reasonable officer would have known, however, is irrelevant to this analysis. This is not a case where courts disagree about the contours of a constitutional right or where officers may be confused about what is required of them under various circumstances. Here, the law that the district court chose to analyze is one that has apparently never been enforced—even in this particular case. Qualified immunity for an unlawful arrest should not arise because some enterprising official after the fact searched the bowels of a library to find a little known or entirely unknown old statute that may apply to the facts.[4] Such a holding would

---

established. For example, if the Supreme Court has issued an opinion condemning racial profiling, but 90 percent of the police in a given geographic area think racial profiling is just fine, an officer would not be entitled to qualified immunity simply because his fellow officers disagree with a clear Supreme Court ruling.

[4]We view the facts in the light most favorable to Rosenbaum for purposes of determining qualified immunity at summary judgment. If there exists a genuine dispute as to the material fact of whether a reasonably

defy the principle of reasonableness upon which qualified immunity is based. *See id.* at 638.

**[14]** Here, considering the facts in the light most favorable to Rosenbaum, all reasonably competent officers would have agreed that he was not committing a crime. There is no scalping law in Nevada; it is simply not a crime to sell tickets to a fair—even when the tickets were received for free. His t-shirt did not suggest fraud, nor were the ticket buyers duped by the sale.

**[15]** The district court's grant of summary judgment on the grounds of qualified immunity for an unlawful arrest is reversed.

## II. *Substantive Due Process Right to Family Integrity*

Next, Rosenbaum and his children argue that Forbus violated their substantive due process right to family integrity when he handcuffed Rosenbaum in front of his children, escorted the children to their mother, asked them whether Rosenbaum had been selling tickets and whether they knew what he was doing was wrong, and told them that it "was wrong" and that he was going to jail for it. The question is whether these facts—taken in the light most favorable to the Rosenbaums—rise to the level of a constitutional violation.

**[16]** The substantive due process right to family integrity or to familial association is well established. A parent has a

---

competent Nevada officer would have been aware of § 205.415 ("collecting for benefit without authority"), the dispute should be presented to and resolved by the fact-finder at trial. The district court may then decide qualified immunity based on the judicially determined facts. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010) (en banc) ("[T]he district court may entertain a post-trial motion for judgment as a matter of law on the issue of qualified immunity after the facts are resolved at trial.").

"fundamental liberty interest" in companionship with his or her child. *Kelson v. City of Springfield*, 767 F.2d 651, 654-55 (9th Cir. 1985). A state may not interfere with this liberty interest, and indeed the violation of the right to family integrity is subject to remedy under § 1983. *Id.* To amount to a violation of substantive due process, however, the harmful conduct must "shock[ ] the conscience" or "offend the community's sense of fair play and decency." *Rochin v. California*, 342 U.S. 165, 172-73 (1952); *see also Pittsley v. Warish*, 927 F.2d 3 (1st Cir. 1991) (abrogated on other grounds). For example, we have held that a plaintiff stated a claim under § 1983 for a violation of the right to family integrity where her mentally disabled son was mistaken for another person, falsely arrested, caused to be extradited to New York from California, and imprisoned; the police department misinformed her of his whereabouts on several occasions until he was finally released two years later. *Lee v. City of Los Angeles*, 250 F.3d 668, 685-86 (9th Cir. 2001). In *Kelson*, we held that parents had stated a cause of action for a violation of their right to companionship and society of a child where their teenage son had committed suicide at school. *Kelson*, 767 F.2d at 653-55.

**[17]** The facts of the case before us do not come close to rising to the level of conduct that "shocks the conscience." Unlike *Lee* or *Kelson*, Rosenbaum was not separated from his children for any extended period of time; rather, the children were walked across the street to their mother who was waiting in their car. It is true that Forbus's—and perhaps other officers'—words to the children were inappropriate and even offensive. The children's father had not in fact done anything "wrong" and Forbus likely exacerbated an already traumatic experience for this four year old and eight year old. And yet we do not hold that the inappropriate conduct amounts to a constitutional violation.

We do not imply that verbal abuse—and even verbal abuse to children in the midst of an arrest—would *never* rise to the

level of a constitutional violation. Rather, in this instance, the officers' conduct does not "shock the conscience."

Because we conclude that the Rosenbaums' right to family integrity was not violated, we need not reach the question of whether Forbus is entitled to qualified immunity for the violation of the right to family integrity.

## CONCLUSION

For the foregoing reasons, the district court's decision granting summary judgment to the defendants is reversed on the unlawful arrest claim and affirmed on the right to family integrity claim. The case is remanded to the district court for proceedings consistent with this opinion. Each party to bear his or her own costs.