**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 28 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ASHLEY LAUREN WATTS, | No.    18-55833 |
| Plaintiff-Appellee, | D.C. No.<br>8:17-cv-01099-AG-SK |
| v. | |
| CITY OF NEWPORT BEACH; et al., | MEMORANDUM[*] |
| Defendants, | |
| and | |
| CHRISTINE MARONEY; MONICA AGUILAR, | |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted August 16, 2019
Pasadena, California

Before:  SCHROEDER and R. NELSON, Circuit Judges, and LEFKOW,[**] District Judge.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Joan H. Lefkow, United States District Judge for the Northern District of Illinois, sitting by designation.

Can a declined credit card for a $16.70 cab fare result in a 42 U.S.C. § 1983 action? One would think not. But here we are.

In the early morning of June 26, 2016, Plaintiff Ashley Watts hired a taxicab to drive her home from a hotel bar where she had been drinking with friends. Upon arrival at her apartment complex, Watts attempted to pay the $16.70 cab fare via credit card, but her card was declined. The driver called the police, and City of Newport Beach police officer Christine Maroney arrived on the scene, confirmed the card was declined, and stated that Watts would be taken to jail unless she could figure out another way to pay. Watts had no other form of payment with her but asked if she could get cash from her nearby apartment. Officer Maroney initially declined, but eventually agreed to escort Watts to her apartment to obtain an alternative form of payment. In the meantime, Officer Monica Aguilar came to the scene.

Once at Watts's apartment, the officers started to follow Watts inside. Watts objected to their entry. Officer Maroney replied, "Then I'm just going to take you to jail." The officers pushed Watts against a wall, causing her to hit her head, kicked her legs out from under her, causing her to land on her knee, applied bodyweight on top of her, and handcuffed her. According to Watts, the handcuffs were excessively tight and caused injury to her wrists. Watts was taken to jail and kept there overnight. The District Attorney filed criminal charges which were

ultimately dismissed.[1]

Watts brought an action under 42 U.S.C. § 1983 alleging, as relevant to this appeal, Fourth Amendment claims for unlawful arrest, unlawful entry, and excessive force, and a First Amendment claim for retaliatory arrest. The officers and other defendants moved for summary judgment, which the district court granted in part. The district court denied summary judgment for the officers, however, after finding that they were not entitled to qualified immunity as to Watts's First and Fourth Amendment claims.

We have jurisdiction over the officers' interlocutory appeal under 28 U.S.C. § 1291. *Plumhoff v. Rickard*, 572 U.S. 765, 771–73 (2014). We review the district court's conclusions regarding qualified immunity de novo. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017). We affirm in part and reverse in part.

1. The officers first contend they had—or reasonably believed they had—probable cause to arrest Watts for theft by false pretenses. To have probable cause, the facts and circumstances known to the officers at the time of the arrest must be "sufficient for a reasonably prudent person to believe that the suspect has

---

[1] Upon release from jail later that morning, Watts again took a cab home. When she got home, she still did not have any money on her and told the driver. This time, however, the driver waited for Watts to return with cash payment. No police were called, and no federal lawsuit resulted.

committed a crime." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th Cir. 2011). Theft by false pretenses under Cal. Pen. Code § 484(a) requires an intent to defraud. *People v. Williams*, 57 Cal. 4th 776, 787 (2013). To reasonably believe Watts committed this offense, the officers needed probable cause to believe that Watts specifically intended to defraud the taxi driver. *See Rodis v. City & Cty. of San Francisco*, 558 F.3d 964, 969 (9th Cir. 2009).

Watts's failure to pay the cab fare "is not enough" to establish this intent. *See People v. Fujita*, 43 Cal. App. 3d 454, 469 (1974). Nor can this intent reasonably be inferred from the officers' assumption that Watts must have known her card was not working, Watts's failure to explain why her card was not working, or her refusal to allow the officers' entry into her home.

The officers are not entitled to qualified immunity on this claim because it was not "*reasonably arguable* that there was probable cause for arrest." *Rosenbaum*, 663 F.3d at 1076. When the arrest occurred in June 2016, it was clearly established that there is no probable cause to arrest where the facts amount to a dispute which is "civil in nature" and officers "lack[] any information which would support that [the arrested individual] had any criminal intent." *Allen v. City of Portland*, 73 F.3d 232, 238 (9th Cir. 1995); *see also Stevens v. Rose*, 298 F.3d 880, 883–84 (9th Cir. 2002). This was such a dispute. Watts hired a cab to drive her home, attempted to pay, but her credit card was declined, and she had no other

4

form of payment with her in the cab. She remained in the taxi, waited for the officers to arrive, and offered to obtain cash from her nearby apartment. Fraudulent intent "has always been" the "essence of [theft by false pretenses]," and without such an intent, Watts's failure to pay the cab fare was an "[o]rdinary commercial default," which "will not be the subject of criminal prosecution." *People v. Ashley*, 42 Cal. 2d 246, 265 (1954). Under these facts, a reasonable officer would not believe probable cause existed to arrest Watts for theft by false pretenses.[2]

2. Next, the officers argue that their entry into Watts's apartment was lawful because Watts lacked a reasonable expectation of privacy when she voluntarily opened the door, thereby permitting the officers to enter to make an arrest. There is no dispute that the officers went *at least* seven feet inside Watts's apartment, past the threshold of the doorway to arrest her. The Fourth Amendment prohibits officers from making even a minimal entry into a person's home without a warrant "unless the officers have probable cause *and* are presented with exigent circumstances." *LaLonde v. Cty. of Riverside*, 204 F.3d 947, 954 (9th Cir. 2000).

---

[2] Watts raises a separate retaliatory arrest claim, arguing her arrest was based solely on her refusal to allow the officers to enter her apartment. Because we conclude there was no probable cause to arrest Watts, and she articulates no unique speech-chilling damages, we find no need to address her retaliatory arrest claim as her damages would be the same as for the false arrest claim. *See Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) (a plaintiff ordinarily must prove the arrest was unlawful to sustain a retaliatory arrest claim).

Here, the officers lacked probable cause and have offered no exigent circumstances that could justify warrantless entry. *See id.* at 955–56. Accordingly, the officers' entry was unlawful.

The officers argue they are entitled to qualified immunity because the law was not settled that the "slight entry" into Watts's apartment was illegal. However, the illegality of the entry was clearly established by *LaLonde*, in which we denied qualified immunity to officers who—with probable cause to arrest—made an even more limited entry into a plaintiff's home when they "crossed the threshold of the door and entered" by reaching in and grabbing the plaintiff's shirt and advancing on the plaintiff after he stepped back. *Id.* at 955. Additionally, "it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor," even where there is probable cause to believe an offense has been committed. *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984). Accordingly, it was clearly established at the time of Watts's arrest that the Fourth Amendment prohibited the officers from entering at least seven feet into the apartment to conduct a warrantless arrest for a $16.70 cab fare and there were no exigent circumstances. Qualified immunity was therefore properly denied.

3. As to Watts's excessive force claim, the district court erred in determining that it could not conclude that the use of force was reasonable because the officers

6

lacked probable cause. Use of force may be reasonable even in the absence of probable cause. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921–22 (9th Cir. 2001). Notwithstanding the lack of probable cause, the court erred by not addressing whether the force used was "objectively reasonable in light of the facts and circumstances" confronting the officers. *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). And our precedent does not clearly establish that the officers used unreasonable force in this circumstance. *See Arpin*, 61 F.3d at 921-22.

The district court's denial of qualified immunity as to Watts's claims for unlawful arrest and unlawful entry are **AFFIRMED**. However, we **REVERSE** the denial of qualified immunity on Watts's excessive force claim.