NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FEB 7 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ELISE BROWN, an individual, | No.   21-56357 |
| Plaintiff-Appellant, | D.C. No. 5:20-cv-01116-MCS-SP |
| v. | |
| COUNTY OF SAN BERNARDINO, a municipal entity; CITY OF CHINO, a municipal entity; MATTHEW GREGORY, Officer; MADALYN BRILEY, Officer; DOES, 3-10, inclusive, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Mark C. Scarsi, District Judge, Presiding

Argued and Submitted December 7, 2022
Pasadena, California

Before: BERZON, R. NELSON, and BADE, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge R. NELSON.

Elise Brown alleges in this § 1983 action that City of Chino police officers

Madalyn Briley and Matthew Gregory (collectively, "Defendants"), after they

stopped her car on suspicion of vehicle theft, subjected her to excessive force and

---

*    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

an unlawful arrest in violation of her Fourth Amendment rights. She appeals the district court's grant of summary judgment in favor of Defendants on qualified immunity grounds. Reviewing de novo, *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019), we affirm in part and reverse in part.

1. When evaluating a Fourth Amendment claim of excessive force, we ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them," keeping in mind three non-exhaustive factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[1] *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). "The most important factor is whether the suspect posed an immediate threat to the safety of the officers or others." *Thomas v. Dillard*, 818 F.3d 864, 889 (9th Cir. 2016).

The officers initially acted reasonably by removing Brown from her car and ascertaining whether she was armed or posed a threat. However, after Brown complied immediately with all instructions, the officers confirmed she was not armed, and "there was no indication at the scene that [she] posed an immediate

---

[1] The first and third *Graham* factors are not disputed: we have previously concluded that "the crime at issue (stolen vehicle or plates) [is] arguably severe," *Green v. City & County of San Francisco*, 751 F.3d 1039, 1050 (9th Cir. 2014), and Brown was not resisting arrest or attempting to evade arrest by flight. Instead, she was completely compliant with the officers' instructions.

threat to the safety of the officers or others," *Green*, 751 F.3d at 1050, a jury could find that it was not reasonable for Defendants to believe that Brown—an 83-year-old, 5'2", 117-pound, unarmed, completely compliant woman—posed any immediate threat.[2] Therefore, a jury could find that it was not reasonable for Defendants to force Brown to her knees and handcuff her. *See id*.

As to whether the law was clearly established, "we need look no further than *Graham*'s holding that force is only justified when there is a need for force." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007). When the *Graham* factors "do not support a need for force, '*any* force used is constitutionally unreasonable.'" *Green*, 751 F.3d at 1049 (quoting *Lolli v. County of Orange*, 351 F.3d 410, 417 (9th Cir. 2003)). And, under clearly established law in this Circuit, "the crime of vehicular theft . . . without more, does not support a finding that [the suspect] pose[s] a threat" justifying the use of force when the suspect is outnumbered, unarmed, and compliant.[3] *Id.* at 1049–51. Therefore, the district

---

[2] Sergeant McArdle testified that he told Brown, "obviously, you do not look like you were going to be a violent suspect."

[3] The dissent asserts that there are differences in the degree of force used in *Green* and the force used here. True, but beside the point. We rely on *Green* as clearly established law only with respect to whether the plaintiff posed an immediate threat solely by virtue of having been suspected of having stolen a car, not with regard to whether the force used was reasonable or whether the level of suspicion with regard to having stolen a car was higher or lower. The facts indicating that the plaintiff in *Green* did not present an immediate threat are materially the same as the facts at issue here. *See Green*, 751 F.3d at 1048, 1050.

court erred when it concluded that Defendants were entitled to qualified immunity as to the excessive force claim.

2. As to the unlawful arrest claim, even if Brown's detention rose to the level of an arrest, and even if Defendants lacked probable cause to arrest her, Defendants are entitled to qualified immunity because they did not violate a clearly established right.

Whether an unlawful arrest violated clearly established law depends on "whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Sialoi v. City of San Diego*, 823 F.3d 1223, 1233 (9th Cir. 2016) (quoting *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011)). Brown relies solely on *Green* to argue that Defendants' conduct violated clearly established law. However, the analysis in *Green* is not applicable here because that case involved an unconfirmed, mistaken license plate match. 751 F.3d at 1045–46. *Green* thus did not provide adequate notice to the officers that Brown's arrest, based on a confirmed license plate match, violated a clearly established constitutional right. The district court did not err when it held that Defendants are entitled to qualified immunity as to the unlawful arrest claim.

**AFFIRMED IN PART and REVERSED IN PART.**[4]

---

[4] The motion to dismiss the City of Chino from this appeal, Dkt. 22, is granted.

*Brown v. County of San Bernardino*, No. 21-56357

NELSON, R., Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's holding to affirm the district court on Brown's unlawful arrest claim. But I dissent from the majority's holding to reverse the district court on Brown's excessive force claim. Assuming without deciding that the defendants used excessive force, the district court held that the unlawfulness of the defendants' conduct was not clearly established. *Brown v. County of San Bernardino*, No. 5:20-cv-01116 MCS (SPx), 2021 WL 5935476, at *3–4 (C.D. Cal. Oct. 14, 2021). I would affirm the district court on that basis.

To put this issue in context, the majority holds it is clearly established that police who encounter an unarmed grand theft auto suspect of small stature are forbidden from instructing the suspect to kneel for a few seconds and placing the suspect in handcuffs for a couple minutes while they verify automobile ownership and confirm nobody else is in the vehicle. We have never so held. And the majority's holding today threatens to chill future police enforcement and investigation in these serious cases. To be sure, handcuffing a well-behaved, unarmed, 83-year-old woman who complied with police direction may violate standards of societal decorum. In hindsight, it seems unnecessary. And grandmas around the country may rightfully wag an experienced finger chastising the police action here. But that is not the standard for establishing a violation of the United

1

States Constitution. More importantly, we have never held that, in these circumstances, instructing a grand theft auto suspect to kneel for a few seconds and handcuffing her for just three minutes while her ownership of the vehicle was verified and the vehicle was cleared constitutes excessive force under the Fourth Amendment.

To be clearly established, the question of whether the defendants' use of force was excessive must have been placed "beyond debate" by existing precedent. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (citation omitted). We can deny qualified immunity only if "a reasonable officer would have understood her conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The majority holds that it was clearly established that police cannot use any force against a person who poses no threat. This mischaracterizes our precedent— and does so in far too generalized terms. *See Kisela*, 138 S. Ct. at 1152 ("This Court has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." (cleaned up)). The cases the majority cites to support this holding, *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) and *Green v. City & County of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014), state that force is only justified when there is a "need for force." But whether a person posed a threat is not the only factor in determining whether force

2

was needed—we must also consider "the severity of the crime at issue" and "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Here, as the majority points out, the "severity of the crime at issue"—stealing a vehicle—is "arguably severe." *See Green*, 751 F.3d at 1050. But according to the majority, *Green* clearly establishes that the crime of vehicular theft alone does not support using *any* force "when the suspect is outnumbered, unarmed, and compliant."

It is true that in *Green*, we found suspicion of a stolen vehicle alone insufficient to make the force used in that case constitutional, but we did not find that *any* force would have been unjustified. *See id.* (suggesting lower degrees of force the officers could have employed). A jury might find that suspicion of a stolen vehicle alone does not make the force used here constitutional either. But the question before us is whether it was *clearly established* that the force used here was unconstitutional. And there are marked differences between the force used in *Green* and the force used here.[1] So, while *Green* may clearly establish that the degree of

---

[1] It is not "beside the point" that *Green* involved a higher degree of force than that used here. The majority claims that under *Green*, the crime of vehicular theft alone does not justify using any force. That is not what *Green* says. In *Green*, we merely held that vehicular theft alone did not justify the force used there, not that *any* force was unjustified. *See Green*, 751 F.3d at 1050. It is very much to the point to explain why the differences in force between the two cases mean that *Green* does not *clearly*

3

force used in that case cannot be justified based on suspicion of a stolen vehicle alone, it does not clearly establish that the degree of force employed here was unjustified on that basis.

The force employed in *Green* was far more intrusive than the force used against Brown. In *Green*, we determined the "degree of intrusion was . . . severe" because the suspect

> was ordered out of her vehicle by as many as six officers, many of whom pointed handguns and a shotgun directly at her. She was forced to her knees and handcuffed, which she had difficulty doing due to her knee problems, and officers continued to train weapons upon her while she was handcuffed on the ground. She estimates that she was in handcuffs for as many as ten minutes and states in deposition that the experience has caused her lasting psychological impact.

*Id.* at 1049. At least three of these key facts differ here. First, there is no evidence that Brown had knee problems or any other difficulty kneeling. Second, the defendants did not train their firearms on Brown while she was handcuffed; they briefly held their firearms at a "low ready" position and then merely kept their firearms unholstered. In *Green*, we approved this very firearm position as mitigating the degree of intrusion. *Id.* at 1050 (stating that the officers "could have held their weapons at a 'low ready' position rather than pointing them directly at [the

---

*establish* that the crime of vehicular theft alone foreclosed the lower degree of force used here.

4

suspect].”).  It is hard to explain how officers who followed the direction in *Green* on this issue can now be found to have clearly violated our direction in *Green*.  Third, while the suspect in *Green* was handcuffed for up to ten minutes, Brown was in handcuffs for no more than three.  Indeed, she was released as soon as the officers verified Brown owned the vehicle and confirmed nobody else was inside.

The majority also claims *Green* clearly establishes that when the government interests “do not support a need for force, ‘*any* force used is constitutionally unreasonable.’”  *See id.* at 1049 (quoting *Lolli v. County of Orange*, 351 F.3d 410, 417 (9th Cir. 2003)).  Here, too, *Green* does not clearly establish that the government interests do not support a need for force because the interests here are different.

We assess the government interests by considering: “(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.”  *Id.* (quoting *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994)).  *Green* does not clearly establish that the government interests do not support a need for force here because the first factor—the severity of the crime at issue—is meaningfully different.

In *Green*, the officers conducted a high-risk stop based on an unconfirmed ALPR hit, meaning the license plate number on the suspect’s vehicle was not actually listed in the stolen vehicle database.  *Id.* at 1042–43.  Here, by contrast, the

5

defendants conducted a high-risk stop based on a *confirmed* ALPR hit—the license plate number on Brown's vehicle was confirmed to have been reported as stolen after the on-duty dispatcher ran the plate number through the California Law Enforcement Telecommunications System and contacted the San Bernardino County Sheriff's Department. Further, unlike the suspect in *Green* who was stopped driving "on Mission Street in San Francisco," *id.* at 1042, Brown was stopped outside a prison, which the district court found is "a place known for stolen vehicles, weapons, and contraband." *Brown*, 2021 WL 5935476, at *3 (internal quotations and citation omitted).

The differences between *Green* and the facts here matter because "[u]se of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela*, 138 S. Ct. at 1153 (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam)). These differences might not make the defendants' conduct here constitutional. This was a frightening experience for Brown. And the defendants may not have used perfect judgment in handcuffing her and instructing her to kneel. But what happened here is different from what happened in *Green*. These differences mean that *Green* does not "squarely govern[]" the specific facts here, so *Green* did not clearly establish that the defendants' use of force against Brown was unlawful. *See id.*

6

Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 1152 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)). Regardless of whether the defendants used excessive force, that does not describe the defendants' conduct here. I respectfully dissent.