**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KYLE CARDENAS, | No.    22-15632 |
| Plaintiff-Appellant, | D.C. No. 2:17-cv-04749-SMM |
| v. | |
| JOSIAH SALADEN; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted February 8, 2023
Phoenix, Arizona

Before:  GRABER, CLIFTON, and CHRISTEN, Circuit Judges.

Plaintiff Kyle Cardenas appeals the district court's order granting summary

judgment for Gilbert Police Department (GPD) Officers Josiah Saladen and Larry

Sinks in Cardenas' 42 U.S.C. § 1983 action alleging unlawful entry, unlawful

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

arrest, and excessive force. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

We review de novo a district court's order granting summary judgment on the basis of qualified immunity. *Evans v. Skolnik*, 997 F.3d 1060, 1064 (9th Cir. 2021). "Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).

1. The Officers are entitled to qualified immunity on Cardenas' unlawful-entry claim. The Officers' initial warrantless entry into the home was justified pursuant to the emergency doctrine because, considering the information the Officers had received from GPD dispatch, they "had an objectively reasonable basis for concluding there was an immediate need to protect others . . . from serious harm." *United States v. Snipe*, 515 F.3d 947, 951–52 (9th Cir. 2008). Dispatch had told the Officers that Cardenas was "feeding the dog poison," that Cardenas and his mother were in the same residence, that Cardenas was "extremely irate" and had "t[aken] the phone away from [his] mother and wasn't allowing her to speak," that he was suffering from PTSD, and that he was complaining of childhood abuse and demanding to speak to Child Protective Services (CPS). This

information provided an objectively reasonable basis for the Officers to believe Cardenas posed a threat to others who were in the family residence with him.

Though Cardenas' parents arguably were no longer in immediate danger once Cardenas entered his bedroom, the Officers' warrantless entry into the bedroom was also justified by an emergency because the Officers had an objectively reasonable basis to believe Cardenas may have been a danger to himself. The Officers had heard from dispatch that Cardenas "was not himself," believed his parents were trying to kill him, had PTSD, was claiming that he had been abused since childhood, and was demanding to speak to CPS despite being an adult man in his thirties. The Officers' personal observations of Cardenas' erratic and volatile behavior and his mother's reaction to his conduct also supported their reasonable belief that he was having a mental health crisis and posed a danger to himself.

Cardenas has not attempted to identify any controlling or persuasive case law clearly establishing that the Officers' entry into his home and bedroom was unlawful, and we are not aware of any such case.

2. The Officers also are entitled to qualified immunity on Cardenas' unlawful-arrest claim. "An officer who makes an arrest without probable cause . . . may still be entitled to qualified immunity if he reasonably *believed* there to have

been probable cause." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011). An officer is therefore entitled to qualified immunity if "it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest." *Id.* Accepting Cardenas' factual account as true for purposes of summary judgment, we assume he was not violent toward his parents, did not poison the family dog, and did not order the dog to attack the Officers. But based on the information the Officers had at the time, we conclude they could have reasonably believed that there was probable cause to arrest Cardenas for animal cruelty. *See* Ariz. Rev. Stat. § 13-2910(A)(3). Similarly, given the information the Officers had received from dispatch and their personal observations, it was reasonable for them to suspect that Cardenas had engaged in some form of disorderly conduct. *See* Ariz. Rev. Stat. § 13-2904. Cardenas has not identified any case holding that police officers violated the Fourth Amendment by making an arrest under similar circumstances, and we are not aware of any such case.

3. Last, the Officers are entitled to qualified immunity on Cardenas' excessive-force claim. The Ninth Circuit cases Cardenas identifies do not "'squarely govern[]' the specific facts at issue" in his appeal because they are distinct in legally significant ways. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1153

4

(2018) (per curiam) (quoting *Mullenix*, 577 U.S. at 15). In *Mattos v. Agarano*, the plaintiff had been pulled over for a minor traffic infraction, was pregnant, did not pose "even a *potential* threat to the officers' or others' safety," and was tased in drive-stun mode three times in rapid succession. 661 F.3d 433, 436–37, 445–46 (9th Cir. 2011) (en banc). And in *Bryan v. MacPherson*, the plaintiff was also pulled over for a minor traffic infraction, was standing twenty to twenty-five feet away from the officer, did not resist arrest "at all," and was tased from behind without warning. 630 F.3d 805, 822, 826–31 (9th Cir. 2010). By contrast, the Officers suspected Cardenas had committed more serious and violent crimes, he was belligerent, the Officers warned Cardenas that they would tase him if he continued resisting their attempts to handcuff him, and Officer Sinks deployed his taser only once. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (providing that relevant considerations for the excessive-force analysis include the severity of the crime at issue, whether the suspect poses an immediate threat to the officers or others, and whether the suspect is actively resisting arrest).

The remaining cases Cardenas cites are not controlling authority and are similarly distinguishable because they involved the gratuitous use of a taser, tasing a suspect who was already subdued, or tasing a suspect who was not resisting arrest or was at most simply noncompliant with an order. *See, e.g., Fils v. City of*

5

*Aventura*, 647 F.3d 1272, 1288–89 (11th Cir. 2011); *Lewis v. Downy*, 581 F.3d 467, 477–78 (7th Cir. 2009); *Orem v. Rephann*, 523 F.3d 442, 444, 446–47, 449 (4th Cir. 2008), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  Because there is neither controlling authority nor a "robust 'consensus of cases of persuasive authority'" establishing that the Officers violated Cardenas' Fourth Amendment rights by tasing him, we conclude that the Officers are entitled to qualified immunity.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

**AFFIRMED.**