**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TRISTAN COOMES; SEAN COOMES, a marital community, *Plaintiffs-Appellants*, v. EDMONDS SCHOOL DISTRICT NO. 15; CHRISTINE AVERY; JOE WEBSTER, *Defendants-Appellees*. | No. 13-35747 D.C. No. 2:12-cv-00319-JCC OPINION |

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, Senior District Judge, Presiding

Argued and Submitted
June 1, 2015—Seattle, Washington

Filed March 23, 2016

Before: Diarmuid F. O'Scannlain, A. Wallace Tashima,
and M. Margaret McKeown, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Civil Rights

The panel affirmed in part and vacated in part the district court's summary judgment and remanded in an action brought by a public school teacher who alleged that she was wrongfully discharged, in violation of her First Amendment rights and state law, after she voiced concerns about her school's special education program to her supervisors and her students' parents.

The panel held that even when construing the evidence in the light most favorable to plaintiff, her speech to her supervisors and the school district administrators was unprotected "up-the-chain-of-command" complaints, and her speech to parents regarding their students' educational programs was, by her own admission, part of her job as head of the school's special education program. The panel therefore concluded that plaintiff failed to meet her burden to show that the relevant speech was made in her capacity as a private citizen, and that the district court's judgment with respect to the First Amendment claim was proper.

Addressing plaintiff's claim under Washington law for wrongful discharge, the panel held that because an intervening authority had overruled the Washington state decision upon which the district court's analysis was based, it was required to vacate the district court's judgment. The panel remanded to the district court for consideration of the

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

wrongful discharge claim in light of *Rose v. Anderson Hay & Grain Co.*, 358 P.3d 1139, 1143 (Wash. 2015). However, because the panel affirmed the district court's grant of summary judgment with respect to plaintiff's claim under federal law, it advised the district court to first consider whether to continue to exercise its supplemental jurisdiction.

## COUNSEL

Sidney C. Tribe, Talmadge/Fitzpatrick PLLC, Tukwila, Washington, argued the cause on behalf of plaintiffs-appellants. With her on the brief were Philip A. Talmadge, Talmadge/Fitzpatrick PLLC, Tukwila, Washington, and Neal J. Philip, Fulton & Philip PLLC, Seattle, Washington.

Duncan K. Fobes, Patterson Buchanan Fobes & Leitch, Inc., P.S., Seattle, Washington, argued the cause for defendants-appellees. With him on the brief was Sarah S. Mack, Patterson Buchanan Fobes & Leitch, Inc., P.S., Seattle, Washington.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether a public school teacher speaks as an employee or a private citizen when she voices concerns about the school's special education program to her supervisors and her students' parents.

I

Tristan Coomes worked for four years at Meadowdale Middle School ("Meadowdale"), in Edmonds School District ("District"), as the manager of the school's new Emotional/Behavioral Disorders ("EBD") program and the primary teacher for students in the program.

Initially, Coomes got along with the administration, including Joe Webster, the Assistant Principal of Meadowdale, and Christine Avery, the school's Principal. Coomes received "satisfactory" performance evaluations. But Coomes's relationship with the school administration later deteriorated, arising from her disagreement with Webster and Avery over the "mainstreaming" of her students. Coomes believed that some of her students who were ready for mainstream classes were not being allowed access to such classes for impermissible financial reasons.

A

In March 2010, Coomes sent Andi Nofziger, her union representative, and Debby Carter, a District human resources manager, an email complaining about treatment by Meadowdale administrators, including Avery. Coomes noted

that she had expressed concerns that EBD students who were ready to move to mainstream classes were not moved or had moves delayed based on improper financial considerations. Coomes forwarded the email to a group of other Meadowdale teachers, and the email chain was then forwarded to Avery in April 2010.

Avery forwarded the email chain to District administrators, stating that it contained false accusations and that she hoped the District would "take a very strong position in stopping this behavior." A few weeks later, Avery emailed Carter and District Assistant Superintendent Ken Limon to express her disagreement with a proposal to reassign Coomes to another school because Avery believed that the reassignment would publicly validate Coomes's complaints about Avery.

Then, during the next school year, the EBD program experienced a significant change. EBD students were placed in more "mainstream" academic classes than in past years as part of "a concerted effort to move the EBD program from a self-contained model to a more inclusive . . . model." Coomes objected to this change when it was originally proposed. She sent Webster an email stating that she thought that new students who had been in self-contained classrooms for sixth grade should start the year in her EBD classroom full time so she could get to know their needs and help them adjust to the new school setting.

Coomes continued to express concerns about changes to the EBD program. Meanwhile, Coomes's evaluations began to worsen, and Webster and Avery wrote Coomes a number of letters criticizing her performance or reiterating their expectations regarding the curriculum and the EBD program.

B

After Coomes complained to District superintendent Nick Brossoit in the spring of 2011, the District agreed to transfer Coomes to a position at nearby Lynnwood High School for the 2011–2012 school year.  However, prior to the start of the academic calendar, Coomes collapsed in the school's halls, "falling to the floor and sobbing uncontrollably."  Coomes then requested and was granted medical leave from September 1 to December 31, 2011.  But, on the advice of her therapist, Coomes decided not to return to work, and on September 9, 2011, Coomes's attorney sent the District a letter stating that it was "impossible for her to continue working" and that she had been constructively discharged. After the District's counsel contacted Coomes's counsel to confirm that Coomes would not be returning to work, the District processed her employment separation.

C

Thereafter, Coomes filed suit against Edmonds School District in Washington state court, alleging that she had been wrongfully discharged under Washington law, that her First Amendment rights were infringed, that she was retaliated against for exercising such rights, and that she was entitled to recovery under a variety of other state law claims.  Her case was removed to the United States District Court for the Western District of Washington, where she added Avery and Webster as defendants.  After discovery, the District and administrators moved for summary judgment on the federal and state claims, and the motion was granted.  Coomes filed

a timely notice of appeal, and we have jurisdiction under 28 U.S.C. § 1291.**[1]**

## II

On appeal, Coomes contends that genuine issues of material fact exist and that the district court improperly entered summary judgment. Specifically, she contends that her speech to supervisors and parents about the treatment of students in the EBD program related to matters of public concern, was not made pursuant to her official duties, and was a substantial or motivating factor in the District's adverse employment actions. She also contends that the district court incorrectly concluded that special education and whistleblower laws foreclose a wrongful discharge claim under Washington law.

## A

Coomes first contends that her First Amendment rights were violated by the adverse employment actions taken against her because of her expressed views about the treatment of students in the EBD program.

---

**[1]** We review a district court's grant of summary judgment de novo. *See Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). Because this appeal is taken from an order of summary judgment in favor of the District, the evidence of Coomes "is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Viewing the evidence in the light most favorable to Coomes, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Coszalter*, 320 F.3d at 973.

1

"[P]ublic employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* While the protection of government employee speech serves both the individual's interest and "the public's interest in receiving the well-informed views of government employees engaging in civic discussion," the public interest is also served by "respect[ing] the needs of government employers attempting to perform their important public functions." *See id.* at 419–20. As such, "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Id.* at 420 (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)).

In *Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009), we set forth the five-factor inquiry for evaluating First Amendment retaliation claims. First, the plaintiff bears the burden of proof at trial of showing (1) that she spoke on a matter of public concern; (2) that she spoke as a private citizen rather than a public employee; and (3) that the relevant speech was "a substantial or motivating factor in the adverse employment action." *Id.* at 1070–71. If the plaintiff establishes such a prima facie case, the burden of proof shifts to the government to show that (4) "the state had an adequate justification for treating the employee differently from other members of the general public"; or (5) "the state would have taken the

adverse employment action even absent the protected speech." *Id.* at 1070–72.**[2]**

All of the *Eng* "factors are necessary, in the sense that failure to meet any one of them is fatal to the plaintiff's case." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (en banc). Because "all five factors are independently necessary," a reviewing court is free to address a potentially dispositive factor first rather than addressing each factor sequentially. *Id.*

---

**[2]** While *Eng* delineates the burden of proof at trial, courts must be "mindful of the shifting burden of proof governing motions for summary judgment under Federal Rule of Civil Procedure 56." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). On a motion for summary judgment,

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.

*Id.* (citations omitted).

2

With the foregoing in mind, we focus on the second *Eng* factor: whether Coomes spoke as a private citizen or as a public employee.

Again, we are guided by ample precedent. The First Amendment does not protect speech by public employees that is made pursuant to their employment responsibilities—no matter how much a matter of public concern it might be. *See Garcetti*, 547 U.S. at 423–24. In *Garcetti*, the Court explained "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. Consequently, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Id.* at 421–22.

The Supreme Court recently emphasized in *Lane v. Franks* that the "mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." 134 S. Ct. 2369, 2379 (2014). Instead, the "critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* Thus, to the extent that Coomes's speech was within the scope of her employment duties, such speech is not protected by the First Amendment.

Whether Coomes was speaking as a private citizen or a public employee is a mixed question of law and fact. *Hagen v. City of Eugene*, 736 F.3d 1251, 1257 (9th Cir. 2013). The "scope and content of [Coomes's] job responsibilities" is a factual question. *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 966 (9th Cir. 2011) (quoting *Eng*, 552 F.3d at 1071). This inquiry is not limited to a formalistic review of Coomes's job description, but is "practical." *Id.* (quoting *Garcetti*, 547 U.S. at 424); *see Marable v. Nitchman*, 511 F.3d 924, 932–33 (9th Cir. 2007).

Also, the Court must, as a matter of law, decide the "'ultimate constitutional significance' of those facts." *Johnson*, 658 F.3d at 966 (quoting *Eng*, 552 F.3d at 1071). If Coomes's "speech 'owes its existence' to [her] position as a teacher, then [she] spoke as a public employee, not as a citizen, and our inquiry is at an end." *Id.* (quoting *Garcetti*, 547 U.S. at 421–22).

Regarding the factual inquiry, the *Garcetti* Court had "no occasion to articulate a comprehensive framework for defining the scope of an employee's duties . . . where there is room for serious debate." *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 (9th Cir. 2008) (quoting *Garcetti*, 547 U.S. at 424).[3] Likewise, in *Lane*, the Court did not provide such a framework because it was "undisputed that [the employee's] ordinary job responsibilities did not include" the speech at issue. 134 S. Ct. at 2378 n.4; *see id.* at 2383 (Thomas, J., concurring). In resolving this factual

---

[3] In *Garcetti*, "there was no dispute" that the speech at issue—an internal memorandum drafted by Deputy District Attorney Ceballos—"had been written in execution of Ceballos's official employment responsibilities." *Posey*, 546 F.3d at 1127.

question, we consider a set of non-exhaustive "guiding principles" drawn from our case law applying *Garcetti*. *See Dahlia*, 735 F.3d at 1074–76.

### III

So the central question becomes whether any genuine issue of material fact exists with respect to the second *Eng* factor: did Coomes speak as a private citizen or a public employee? Because the plaintiff bears the burden of proof at trial on this factor, a defendant moving for summary judgment must either produce evidence establishing that the plaintiff spoke as a public employee or show, through argument, that the plaintiff does not have enough evidence to establish that she spoke as a private citizen. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the defendant meets that burden, the burden then shifts to the plaintiff to designate specific facts demonstrating the existence of genuine issues for trial. *See Oracle*, 627 F.3d at 387.

### A

Here, the District initially bore the burden of production to show that Coomes spoke as a public employee or lacked evidence sufficient to establish that she spoke as a private citizen. To meet that burden, the District submitted Coomes's formal job description and submitted her emails that allegedly formed the basis for retaliation. In addition, the District argued that "Coomes focused her complaints on things that happened in her classroom, with individual students, during the school day," that her complaints to her supervisors occurred in her role as teacher, and that she referred to herself as a teacher and employee in her email to

the District's human resources manager and her union representative. On appeal, the District cites both Coomes's job description and her declaration to show that she was responsible for managing the EBD program and was part of the IEP team. Coomes does not argue that the District failed to meet its initial burden and thus the burden shifts to Coomes to demonstrate that genuine issues of material fact exist.

Before the district court and now on appeal, it appears that Coomes neglected to designate specific facts in the record demonstrating the existence of genuine issues of material fact for trial. Although she argued below that her duties "did not include battling with District representatives over the special education rights of her students" and did not "include speaking out on behalf of herself and her fellow staff members about bullying and harassment by Meadowdale administrators," she cited only one piece of evidence to establish the scope of her duties—her formal job description.[4] Coomes's conclusory statements about her duties and her lone citation to the factual record were insufficient to meet her burden to show that genuine issues of material fact exist. *See Bader v. N. Line Layers, Inc.*, 503 F.3d 813, 820 n.4 (9th Cir. 2007) ("[B]are assertions of a legal conclusion, not supported by any other 'specific facts showing that there is a genuine issue for trial,'" are insufficient to raise a genuine issue of material fact. (quoting Fed. R. Civ. P. 56(e)).

---

[4] For the first time on appeal, Coomes points to claims in her declaration that she was "harassed" for "voicing [her] concerns" to parents and ordered "not to share [her] opinions" to demonstrate that her speech was not part of her employment responsibilities. We decline to address new evidence cited for the first time on appeal to seek reversal of a lower court's summary judgment determination. *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 848 n.4 (9th Cir. 2004) (quoting *Bankamerica Pension Plan v. McMath*, 206 F.3d 821, 825 (9th Cir. 2000)).

"Where . . . the case turns on a mixed question of fact and law and the only disputes relate to the legal significance of undisputed facts, the controversy is a question of law suitable for disposition on summary judgment." *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Here, Coomes failed to establish that there were any genuine issues of material fact for trial, but rather focused her argument on the relevant case law. As a result, summary judgment would be appropriate if legally supportable.

B

Coomes describes her speech as relating to two topics—the "illegal and improper treatment of vulnerable students in the public school system" and "bullying and harassment by Meadowdale administrators in retaliation for taking a stand." Coomes's speech was transmitted to two distinct audiences—District personnel and parents. We address Coomes's speech as directed to each audience in turn.

1

As we have explained, "whether or not the employee confined [her] communications to [her] chain of command is a relevant, if not necessarily dispositive, factor in determining whether [s]he spoke pursuant to [her] official duties." *Dahlia*, 735 F.3d at 1074. Thus, "generally, 'when a public employee raises complaints or concerns up the chain of command at [her] workplace about [her] job duties, that speech is undertaken in the course of performing [her] job.'" *Id*. (quoting *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008)).

In addition to this guiding principle from *Dahlia*, Coomes's job description and her declaration both shed light on the factual question of the scope of her duties. Coomes's declaration states that she "was put in charge of the EBD program" and "successfully managed the EBD program." According to her job description, Coomes was responsible for assisting and supporting building staff regarding EBD students, participating with staff to develop strategies to address behavior problems, developing IEPs, providing instruction within the EBD classroom, implementing positive behavior supports for all students, and attending to the physical and safety needs of students. Lastly, the job description notes: "This position will have significant contact with parents, students, and District staff requiring the ability to work collaboratively with a variety of people."

Based on the job description and declaration, the district court concluded that "it was part of Coomes's job as the IEP manager and a member of the IEP team to point out failures to abide by IEPs" and that "it was part of Coomes's job as the EBD teacher to communicate with administrators and parents about her views on the placement and progress of EBD students and appropriate management of the EBD program." As discussed above, Coomes has not identified sufficient record evidence to demonstrate that an issue of fact exists with respect to the scope of her duties.

Coomes's speech to District administrators raised complaints or concerns about poor treatment by the Meadowdale administration and about potential mismanagement of the EBD program. Coomes complained about the administration's treatment of teachers in an email

sent on March 26, 2010 from her to Carter and Nofziger.[5] Coomes stated that she believed Avery created a "hostile work environment" by targeting teachers who openly disagreed with administrative decisions. Coomes noted that she was a target of administration hostility because she expressed concerns that EBD students who were ready to move to mainstream classes were not moved or had moves delayed based on financial considerations. She stated without elaboration that this late mainstreaming practice was, "in some opinions, unethical." Coomes forwarded the email to a group of other Meadowdale teachers, and it was eventually forwarded to Avery.

In addition to complaints about treatment by the administration, Coomes raised concerns about the management of the EBD program in numerous communications. For example, she emailed her union representative and Assistant Superintendent Anthony Byrd with concerns that students' placements were inconsistent with their IEPs and said that she wanted to put her concerns on the record "before something seriously negative happens." Two days later, Coomes emailed Nofziger and Limon claiming that Webster's decision to mainstream EBD students was not supported by research. She again referenced discrepancies with student IEPs and stated that Meadowdale

---

[5] Coomes copied her union representative on several of the relevant emails to District administrators. Although Coomes's counsel suggested at oral argument that Coomes's copying her union representative on correspondence with District administrators might be significant, her briefs in this court and below do not argue that communications with her union fall into a separate category of communications that is outside the scope of her duties. As a result, Coomes has waived any such argument on appeal. *See Chadd v. United States*, 794 F.3d 1104, 1109 n.4 (9th Cir. 2015).

was not following "best practices" with respect to EBD students.

Later that month, Coomes sent an email to Webster and the rest of the team managing the EBD program expressing concerns about a student's placement and stating that the student's guardian did not agree with the placement.

In October 2010, Coomes emailed Nofziger, Limon, and Carter to voice her concerns over a pending meeting with Webster "regarding my students and program and my continued distress over my current position." She complained that "everything" in her program was now "dependent upon [Webster's] approval," and noted that she was being denied the "ability to manage [her] students programs." She also asserted that in at least one instance Webster inappropriately "de-escalat[ed]" a fight and put his hands on an EBD student without proper training. Further, she voiced her fear that she could not "protest any of this with [Webster] as it has resulted in belittling comments and veiled threats."

On February 15, 2011, Coomes sent an email to Avery and Webster regarding an incident with an EBD student that had occurred the previous Friday, and which Avery, Webster, and Coomes had apparently discussed. Coomes stated she needed to ensure that her "professional input is recorded and documented," recounted that she had disagreed with the choice to mainstream the student, and implied that if she had been listened to, and the student had been placed in a more restrictive environment, the incident would not have occurred.

Viewing the evidence in the light most favorable to Coomes, we conclude that her speech to Meadowdale and District administrators is made up of the "complaints or concerns" raised "up the chain of command at [Coomes's] workplace about [her] job" that this court has concluded are generally not protected under *Garcetti*. *Dahlia*, 735 F.3d at 1074 (quoting *Davis*, 518 F.3d at 313).

Moreover, Coomes has failed to raise a genuine issue of material fact with respect to the scope of her duties, and the evidence indicates that her communication with District staff about the implementation of IEPs and management of the EBD program fell within her job duties as manager of the EBD program. Therefore, we are satisfied that such speech was made in her role as a public employee and is not protected by the First Amendment.

2

Coomes also spoke to parents—clearly outside of her chain of command. However, communicating with parents about students' IEPs and their progress in the EBD program was part and parcel of Coomes's job. Coomes's own declaration repeatedly emphasizes that her responsibilities included collaborating with parents and encouraging parent involvement in the IEP process. Indeed, one of her complaints about the District's activity was that it interfered with the collaboration with parents that was part of her job. In an email from Coomes to Webster—relating Coomes's discussions with parents regarding their children's classroom placements—Coomes implied she did not agree with the placement choices being made, but also indicated that she believed communicating with parents regarding placement choices was part of her job. Coomes even stated in one of her

emails to Avery that "[a]s case manager, *it is my role* to talk with parents about developments at school."  (emphasis added).  In her own self-assessment, Coomes stated that she believed she had been successful in fulfilling her responsibility to communicate with students' parents and guardians regarding "their students progress, needs, and successes as well as changes in the program or expectations."

Of course, even if Coomes's duties as the EBD program manager and instructor included speaking to parents regarding their children's participation in the program, she could have gone outside her duties in speaking to parents about other matters.  However, Coomes has not pointed to any record evidence indicating that her conversations with parents went beyond discussion of IEPs and the implementation of such IEPs within the District's EBD program.  In fact, Coomes's own declaration indicates that the very "concerns" she voiced to parents, and which she was "ordered" not to share, all involved her disagreement with the District over its handling of students' IEPs and management of her EBD program.  Her "concerns" regarded her objections to the District's process of mainstreaming students, and the administration's "refus[al] to pull [students] out of the mainstream classes and allow them to be in the EBD classroom."

We therefore conclude that Coomes's speech to parents was within the scope of her duties and is not protected by the First Amendment.

C

Even when construing the evidence in the light most favorable to Coomes, her speech to her supervisors and

District administrators is unprotected "up-the-chain-of-command" complaints, and her speech to parents regarding their students' educational programs was, by her own admission, part of her job as head of the EBD program. We therefore conclude that Coomes failed to meet her burden to show that the relevant speech was made in her capacity as a private citizen, and that the district court's judgment with respect to Coomes's First Amendment claim was proper.

IV

Coomes also contends that the district court improperly granted summary judgment on her claim under Washington law for wrongful discharge against public policy.

To determine whether a plaintiff has a cause of action for this tort under Washington law, courts analyze:

> (1) the existence of a "clear public policy" (clarity element), (2) whether "discouraging the conduct in which [the employee] engaged would jeopardize the public policy" (jeopardy element), (3) whether the "public-policy-linked conduct caused the dismissal" (causation element), and (4) whether the employer is "able to offer an overriding justification for the dismissal" (absence of justification element).

*Rose v. Anderson Hay & Grain Co.*, 358 P.3d 1139, 1143 (Wash. 2015) (citation omitted).  As part of the "jeopardy element," Washington courts had required a plaintiff to "show that other means of promoting the public policy are inadequate." *Korslund v. DynCorp Tri-Cities Servs., Inc.*,

125 P.3d 119, 126 (Wash. 2005), *overruled by Rose*, 358 P.3d 1139. Here, the district court relied entirely on *Korslund*'s "adequacy of alternative remedies" analysis to dismiss Coomes's claim for wrongful discharge.

It turns out that, after oral argument in this appeal, the Washington Supreme Court overruled *Korslund* in *Rose*.[6] The state supreme court expressly discarded the "adequacy of alternative remedies" analysis and held that "the existence of alternative statutory remedies, regardless of whether or not they are adequate, does not prevent the plaintiff from bringing a wrongful discharge claim." *Rose*, 358 P.3d at 1141.

Because an intervening authority has overruled the Washington state decision upon which the district court's analysis was based, we must vacate the district court's judgment with respect to Coomes's claim for wrongful discharge. *See Huddleston v. Dwyer*, 322 U.S. 232, 236–37 (1944) ("[A] judgment of a federal court ruled by state law and correctly applying that law as authoritatively declared by the state courts when the judgment was rendered, must be reversed on appellate review if in the meantime the state courts have disapproved of their former rulings and adopted different ones.").

We remand to the district court for consideration of the wrongful discharge claim in light of *Rose*. However, because we affirm the district court's grant of summary judgment with respect to Coomes's claim under federal law, the district court should first consider whether to continue to exercise its supplemental jurisdiction. *See* 28 U.S.C. § 1367(c); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010)

---

[6] We ordered supplemental briefing on the impact of *Rose* on this case.

("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." (citation omitted)).

V

For the foregoing reasons, the judgment of the district court is affirmed with respect to Coomes's First Amendment claims and vacated with respect to her state-law wrongful discharge claim. Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, VACATED IN PART**, and **REMANDED.**