FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KIRSTIN JOHNSON; F.M.; M.D.M.; M.P.M.; V.M.; T.M.,

*Plaintiffs-Appellants*,

v.

KIERSTIE BARR; SAMSON HUNG; MARINA CHACON; FLINT PAUL; CITY AND COUNTY OF SAN FRANCISCO,

*Defendants-Appellees*.

No. 21-16547

D.C. No.  3:20-cv-01569-SK

ORDER AND AMENDED OPINION

Appeal from the United States District Court
for the Northern District of California
Sallie Kim, Magistrate Judge, Presiding

Argued and Submitted January 24, 2023
San Francisco, California

Filed July 6, 2023
Amended August 18, 2023

Before:  Ronald M. Gould, Johnnie B. Rawlinson, and
Daniel A. Bress, Circuit Judges.

Order;
Opinion by Judge Gould;
Partial Concurrence and Partial Dissent by
Judge Rawlinson

## SUMMARY[*]

### Civil Rights / Qualified Immunity

In an action brought by Kirstin Johnson and her five minor children alleging federal and state law claims arising out of Johnson's arrest, the panel affirmed the district court's grant of summary judgment to the defendants—individual police officers and the City and County of San Francisco—on Johnson's federal claims based on qualified immunity; remanded to the district court Johnson's state law claims for false arrest and negligence; affirmed the district court's grant of summary judgment to the defendants on the remaining state law claims; and affirmed the district court's denial of the motion to recuse.

The panel first considered whether there was probable cause to arrest Johnson under the three statutes cited by defendants. The panel held that there was a jury question whether officers had probable cause to arrest Johnson. Some of the bases on which the defendants attempt to claim probable cause are not supported by the record. On the other hand, there were other facts, even when viewed in the light

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

most favorable to Johnson, that suggest defendants may have had probable cause to arrest Johnson.

However, Johnson's federal claims are still subject to qualified immunity. In applying the qualified immunity analysis to claims of unlawful arrest, there is a two-step inquiry: whether there was probable cause for the arrest, and whether reasonable officers could disagree as to the legality of the arrest. The panel held that although a reasonable jury could find that defendants lacked probable cause to arrest Johnson, the defendants were entitled to qualified immunity because, even construing all facts in Johnson's favor, the law did not clearly establish that probable cause was lacking. Johnson did not sufficiently show how her arrest violated a clearly established right to be free from an unlawful arrest when the undisputed evidence (under the probable cause analysis) presented before the district court does not show that every reasonable officer would be on notice that the actions taken by the defendants were unconstitutional. The facts supported the defendants' assertion that no clearly established law prevented the officers from believing Johnson was in violation of either California Penal Code § 647(f), prohibiting public intoxication, or California Penal Code § 273a, prohibiting child endangerment. The panel held that qualified immunity applied in the context of either of these statutes, and that determination is sufficient to resolve Johnson's 42 U.S.C. § 1983 claims.

However, because the panel concluded that there was a jury question as to whether defendants had probable cause to arrest Johnson, the panel vacated the district court's grant of summary judgment on Johnson's state law false arrest and negligence claims, which were premised on a finding that probable cause existed as a matter of law. The panel

remanded the vacated state law claims to the district court for further proceedings. On remand, because there is no longer any federal claim in this case, the district court may determine, under its discretion, whether to retain supplemental jurisdiction over the remaining state law claims or to remand the case to state court.

Finally, the panel considered the motion to disqualify or recuse Magistrate Judge Kim. To prevail, the party filing the motion must show extrajudicial bias or prejudice. In granting a confidentiality designation for all parts of bodycam footage showing Johnson's children, Judge Kim wrote that Johnson's actions were "disturbing." Johnson filed a motion to recuse or disqualify Judge Kim, and Judge Donato denied the motion. The panel affirmed the district court and held that Judge Donato did not abuse his discretion in denying the recusal motion.

Concurring in part and dissenting in part, Judge Rawlinson concurred with the holding that the officers in this case were entitled to qualified immunity on Johnson's federal claims. She dissented with the treatment of the state law claims. Rather than vacating the district court's grant of summary judgment on some state law claims, she would vacate the district court's grant of summary judgment on the state law claims in its entirety. She would then remand for the district court to decide, in the first instance, whether to continue to exercise supplemental jurisdiction over the state law claims.

## COUNSEL

Ben Rosenfeld (argued), Law Office of Dennis Cunningham, San Francisco, California; Gerald B. Singleton, Singleton Schreiber LLC, San Diego, California; for Plaintiffs-Appellants.

Kaitlyn M. Murphy (argued) and David Chiu, City Attorneys; Renee E. Rosenblit, Deputy City Attorney; Meredith B. Osborn, Chief Trial Deputy; San Francisco City Attorney's Office, San Francisco, California; Rebecca Bers, Deputy City Attorney; United States Department of Justice, Antitrust Division, San Francisco, California; for Defendants-Appellees.

## ORDER

The opinion in the above-captioned matter filed on June 6, 2023 and published at 73 F.4th 644 is AMENDED as follows:

At 73 F.4th at 651, replace the sentence beginning with <Under our precedent in *Act Up!/Portland v.* Bagley> with <Generally, "the existence of probable cause is a question for the jury," though summary judgment is appropriate when there is no genuine issue of fact and if "no reasonable jury could find an absence of probable cause under the facts." *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994). However, when evaluating qualified immunity, under our precedent in *Act Up!/Portland v. Bagley*, the threshold "determination of whether the facts alleged could support a reasonable belief in the existence of probable cause . . . is [] a question of law to be determined by the court." 988 F.2d

868, 873 (9th Cir. 1993); *see also Peng v. Mei Chin Penghu*, 335 F.3d 970, 979–80 (9th Cir. 2003).>

With these amendments, the panel unanimously voted to deny Appellants' Petition for Panel Rehearing and Rehearing En Banc. The full court has been advised of the Petition for Rehearing En banc and no judge of the court has requested a vote on the Petition for Rehearing En Banc. Fed. R. App. P. 35.

The Petitions are **DENIED**. No future petitions for rehearing or rehearing en banc will be entertained.

**IT IS SO ORDERED.**

**OPINION**

GOULD, Circuit Judge:

Plaintiff-Appellant Kirstin Johnson ("Johnson"), on behalf of herself and her five minor children, appeals the district court's grant of summary judgment in favor of the individual defendant police officers and the City and County of San Francisco ("Defendants"). This case arises out of the arrest of Johnson in San Francisco on January 31, 2019. The district court granted summary judgment in favor of Defendants on Johnson's federal 42 U.S.C. § 1983 claims and state law claims, concluding that officers had probable cause to arrest Johnson. Alternatively, the district court held that Defendants were entitled to qualified immunity on Johnson's § 1983 claims. We have jurisdiction under 28 U.S.C. § 1291 to review final decisions of the district court. We review *de novo* the grant of summary judgment, *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987,

988 (9th Cir. 2016) (*en banc*), and review pursuant to Federal Rule of Civil Procedure 56(c), under which the contested evidence is viewed in the light most favorable to the nonmoving party, in this case Johnson. As part of the summary judgment review, we also review the district court's qualified immunity determination *de novo*. *Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022). We affirm the district court's grant of summary judgment to the Defendants on Johnson's federal claims based on qualified immunity. Because we hold that the question of whether police officers had probable cause is properly a question for the jury, we remand to the district court Johnson's state law claims for false arrest and negligence. We affirm the district court's grant of summary judgment to the Defendants on the remaining state law claims. We also affirm the district court's denial of the motion to recuse.

## I. Background

Johnson was arrested on January 31, 2019, after an encounter with several members of the San Francisco Police Department, including the named individual defendants. Johnson brought several federal claims under 42 U.S.C. § 1983 stemming from her alleged unlawful and unreasonable arrest and subsequent separation from her children. Johnson also brought state law claims based on her alleged unlawful arrest.

In any case involving probable cause or the invocation of qualified immunity as a defense, we must carefully consider the facts that led to the action in question. In this case, we draw not just on the factual allegations in the amended complaint, but also the body camera footage ("bodycam footage") submitted by both parties to determine if there is a "genuine dispute as to any material fact" as

required under Federal Rule of Civil Procedure 56. We have carefully reviewed the bodycam footage submitted in the excerpts of record. The summary below is not intended to be a comprehensive retelling of every event that occurred, but should assist a reader in evaluating the claims asserted and their disposition.

## A. Johnson's Arrest

On January 31, 2019, at around 9:00 pm, Lieutenant Marina Chacon and Officer Kierstie Barr approached Johnson, her four children, and another woman as Johnson and the other woman talked near Johnson's van, parked on a street adjoining Dolores Park in San Francisco, California. Officer Barr initiated the conversation with Johnson by introducing herself and stating that she was "just coming over here to check on [Johnson and her kids]." Officer Barr asked Johnson if she was doing alright, and Johnson smiled and said "yes." Officer Barr later asked to speak with Johnson privately. Officer Barr then explained that someone had called in because of a concern about Johnson's partner, and asked if Johnson knew where he was. Johnson stated that "he went for a walk, I'm not sure."

Officer Barr asked if Johnson had consumed any drugs or alcohol, reassuring Johnson that she "was not in any trouble, not in any trouble at all." Johnson responded, "I'm good." Officer Barr explained that she was asking because Officer Barr could "smell something," presumably on Johnson's breath or body. At that point, an unidentified man arrived to alert Officer Barr to an intoxicated man with a child nearby. When one of the officers mentioned that Johnson had previously said that her husband had gone for a walk, Johnson added, "He went on a walk, but I didn't know where he was, though whenever you said that I saw him up

there playing basketball with our son." During this time, Johnson explained that they do not "live around here" and that they live "up north."

One of the officers then asked Johnson, "Do you have any ID on you?" to which Johnson responded "absolutely" and produced the document after a short search. Johnson explained that they had come to San Francisco "on this adventure, but then [her] husband started drinking." Officer Barr asked what else had happened and said that Johnson "had been drinking clearly," to which Johnson responded "Yeah, I've been drinking a little bit." Officer Barr asked how much Johnson had been drinking, but Johnson did not answer the question. Lieutenant Chacon then asked Johnson where they were headed, and Johnson responded that they "were going to get a hotel room."

Johnson asked to speak with Officer Barr about "what [Johnson] should do and what is going on." Officer Barr asked Johnson to wait, and eventually said to Lieutenant Chacon that Johnson was "811," which refers to an intoxicated individual. When backup officers arrived, Lieutenant Chacon left to brief the other officers, including Sergeant Flint Paul, and told the other officers that the dad is "811" and that the "mom is also 811."

In response to more questions from Officer Barr, Johnson stated that she had a "mixed drink earlier" but did not elaborate. When Officer Barr asked Johnson when she started drinking, Johnson replied, "It's not that I don't know, but like, I really don't feel that like—if I answer any of your questions right now, I don't feel like you have my heart at interest, so I don't really feel like as though I should answer any of your questions, because I don't feel like you are looking at me with eyes of love. . . . I feel like [Lieutenant

Chacon] looks at me a little bit more like a mother, and so I feel like it's hard for me to answer your questions –" At that point, Officer Barr got a request to assist in the arrest of Johnson's husband and left, at which point Johnson became visibly animated at the fact that her husband was being arrested.

Johnson stated to Lieutenant Chacon, who remained with Johnson, "Listen, my husband is a doctor, he's an emergency room [trails off]. He doesn't drink, we don't do this stuff ever."   Shortly thereafter, Johnson became animated when she saw that someone she did not know was holding her infant. Johnson exclaimed, while speaking with Lieutenant Chacon, "Oh, oh, that's my baby, that's my baby. Oh, please please please ask this man to give me my child, please ask this man to give me my child . . . por favor." At the same time that Johnson was making these statements, Officer Hung was speaking with another officer and an apparent civilian about not being able to hold a baby correctly. Officer Hung handed the baby to a civilian for about a minute. Lieutenant Chacon told Johnson, "Your husband was up there. [Johnson: "playing basketball"] He's intoxicated with your infant. [Johnson: "I know, I know, I've been trying to control him, but I'm a person and I cannot control another person. I have asked repeatedly that he listen to me, he is not listening to me . . . throughout the night."]" Lieutenant Chacon repeatedly told Johnson that she needed to calm down because her kids were watching.

During Johnson and Lieutenant Chacon's conversation, one of Johnson's children came toward the pair crying, leading Johnson to state to Lieutenant Chacon, "Please stop, please do not let these people—you don't understand how much you will hurt my children, keep them away from my kids please." Lieutenant Chacon responded, "They're not

taking your children." Sergeant Paul came to consult with Lieutenant Chacon, and Sergeant Paul stated, "obviously they're going to go to [Child Protective Services]," to which Chacon agreed. They also agreed on the need to go to the station.

Another officer now on the scene, Officer Roman, asked for Johnson's ID. Johnson responded that she gave the ID to another officer, to which Officer Roman said, "That's ok." Johnson continued to express concern for her infant who was now being held by Officer Hung.

The officers at the scene began to arrange Johnson's van to transport the children to the police precinct. Lieutenant Chacon asked Johnson if she had car seats in the van, to which Johnson responded "yes," explaining that she had enough seats for the children. Johnson further explained that most of the car seats were in the back of the van and that "[they] move them around because it's kind of like a playhouse." Johnson asked if she "could see the rest of the kids." Officer Roman said that her kids are fine and mentioned that Officer Hung had her infant. Johnson responded, "I know, I would like to see my baby" and got visibly emotional.

Sergeant Paul told Johnson that they were all going back to the station where it was safer and off the street, to which Johnson replied at varying points, "Yes sir" and "I understand." Sergeant Paul asked for Johnson's permission to allow police officers to drive her children back to the station in their van, to which Johnson responded "Okay." Sergeant Paul then mentioned that they would be separating Johnson from her children and would have Johnson ride with her husband in a police car. Johnson responded that she was not sure if one of her children would be comfortable riding

back "without Mommy," to which Sergeant Paul responded that he required Johnson's assistance in making things "go as smooth as possible." Johnson began to comfort her children as requested by Sergeant Paul. Johnson then warned the officers that her infant would not like being placed in a car seat, to which Sergeant Paul responded, "Well, most of us are parents, we have dealt with squirrely kids before. Thank you very much."

The officers began asking questions regarding the arrangement of the car seats. During Johnson's explanation, Johnson's children can be heard crying. Johnson asked to nurse her child, a request denied by Officer Barr, who stated, "You told me you were intoxicated . . . I'm not going to let you be able to nurse your child." Johnson responded, "First off, I never said I was intoxicated. . . ."

Sergeant Paul and an animal care and control officer spoke with Johnson as Sergeant Paul noted that Johnson had "handed her dog off to a person walking down the street." Johnson began to explain that "was part of the reason we came to San Francisco, we had . . ." but Sergeant Paul cut Johnson off and asked if she would like to "surrender [her] dog to Animal Care and Control." Sergeant Paul left Johnson to speak with the animal care and control officer.

Johnson approached the van again, as one of her children appeared to be crying. Johnson again requested to nurse her child, stating that "My infant is crying, he needs to nurse." After a request from Officer Ospital to step back, Johnson stepped to the back of her van, followed by Officer Ospital. Johnson said that she was "grabbing some coconut water." Officer Ospital replied, "OK, just do me a favor and get back on the sidewalk though, OK? Your kids are going to be taken

care of." Johnson asked how her children were being taken care of "if you aren't even letting me touch my child."

At that point, the animal care and control officer asked if Johnson had an ID and requested to see it. Johnson responded by stating "I absolutely do" but then asked if it was "necessary" to provide her ID. The animal control officer responded by stating, "Yes, it is" and Johnson asked Sergeant Paul if she "would go to jail if I don't give it to this gentleman?" Sergeant Paul responded, "You need to give it to him," and Johnson reiterated her question to Paul and stated that she "would gladly give it to [Sergeant Paul]." After further discussion, Sergeant Paul stated, "I would like have your ID." After Johnson continued to speak, Sergeant Paul told Johnson, "Why don't you go ahead and put the lid back on there," referring to her coconut water. In response, Johnson took a swig of her coconut water. Sergeant Paul reached for her coconut water, leading Johnson to jerk back. Sergeant Paul said, "Ma'am, your kids are watching. . . [unclear dialogue] All you have to do is calm down." Sergeant Paul then arrested Johnson, while Johnson continued to protest loudly that she "was not doing anything wrong."

## B. Subsequent Events

The police officers took Johnson and her children to the local police station in separate vehicles, with the children in Johnson's van accompanied by at least one of the officers. At the station, Johnson was booked on one misdemeanor count of public intoxication in violation of California Penal Code § 647(f) and five counts (for each of her children) of felony child endangerment under California Penal Code § 273a(a). Also, in the police report, Johnson's actions were classified as resisting, delaying, or obstructing a peace

officer under California Penal Code § 148(a)(1), and although Johnson was not booked under that charge, the Defendants point to this statute as an alternative source of probable cause. Meanwhile, Johnson's children were placed in the custody of Family and Children Services. As Johnson was visiting San Francisco from Mendocino County, her children were eventually placed in the custody of the Mendocino County Family and Children Services and transported to Ukiah, California, a town north of San Francisco.

Johnson and her husband each paid $20,000 in non-refundable bail bonds and were released the next day. The two retrieved their van from South San Francisco, picked up the husband's parents in Santa Cruz as a condition of the children's release, and subsequently drove up to Ukiah to retrieve their children, who were released into their custody soon after. The District Attorney declined to prosecute Johnson and her husband and dropped all charges.

## C. Procedural History

Johnson and her husband initially filed suit in San Francisco Superior Court on October 25, 2019. In their complaint, Johnson and her husband brought the following federal claims under 42 U.S.C. § 1983: unlawful and unreasonable arrest under the Fourth Amendment, interference with and retaliation against free exercise of expression under the First Amendment, unlawful and unreasonable search and seizure under the Fourth Amendment, and deprivation of due process under the Fourteenth Amendment. Johnson and her husband also alleged state law claims of false arrest and imprisonment, intentional and negligent infliction of emotional distress, Bane Act violations, trespass to chattels, and negligence.

The case was removed to the Northern District of California by the Defendants, and the parties stipulated to dismiss all claims by Johnson's husband and claims against some Defendants. During discovery, Johnson filed a motion to recuse or disqualify Magistrate Judge Kim based on statements Judge Kim made during proceedings related to a motion to keep the bodycam footage confidential. Judge Donato, to whom the motion was referred, denied the motion.

Defendants moved for summary judgment on May 28, 2021. After briefing and a hearing, Judge Kim granted summary judgment on August 24, 2021 to Defendants on the basis of a finding of probable cause, and alternatively, on the basis of qualified immunity. This timely appeal followed.

## II. Standards of Review

We review *de novo* the grant of summary judgment. *Animal Legal Def. Fund*, 836 F.3d at 988. Pursuant to Federal Rule of Civil Procedure 56(c), we "view the evidence in the light most favorable to the nonmoving party, determine whether there are any genuine issues of material fact, and decide whether the district court correctly applied the relevant substantive law." *Id.* On summary judgment, we also review the district court's qualified immunity determination *de novo*. *Hughes*, 31 F.4th at 1218. We can also affirm on any ground supported by the record even if not explicitly relied upon by the district court. *CFPB v. Gordon*, 819 F.3d 1179, 1187 (9th Cir. 2016).

Generally, "the existence of probable cause is a question for the jury," though summary judgment is appropriate when there is no genuine issue of fact and if "no reasonable jury could find an absence of probable cause under the facts." *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994).

However, when evaluating qualified immunity, under our precedent in *Act Up!/Portland v. Bagley,* the threshold "determination of whether the facts alleged could support a reasonable belief in the existence of probable cause . . . is [] a question of law to be determined by the court." 988 F.2d 868, 873 (9th Cir. 1993); *see also Peng v. Mei Chin Penghu*, 335 F.3d 970, 979–80 (9th Cir. 2003).  We look to state law (in this case California state law) to determine "[w]hether an officer is authorized to make an arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

The denial of a motion to disqualify the assigned judge is reviewed for abuse of discretion. *Thomassen v. United States*, 835 F.2d 727, 732 (9th Cir. 1987).

## III.  Discussion

Three main questions arise in this dispute: (1) whether there was probable cause to arrest Johnson under either of the three statutes cited by Defendants; (2) whether the Defendants were entitled to qualified immunity as to the federal claims; and (3) whether the district court erred in denying Johnson's motion to recuse or disqualify Judge Kim.  We affirm the district court's grant of summary judgment on the federal claims on the grounds of qualified immunity, remand some of the state law claims, and affirm the district court's denial of the motion to recuse Judge Kim.

### A.  Probable Cause

In evaluating the record, we note that there is a substantial question whether the facts, when evaluated in the light most favorable to Johnson, would permit a grant of summary judgment in favor of Defendants on the issue of whether there was probable cause to arrest Johnson.  We have previously stated that we must "examine whether the

facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe a suspect has committed, is committing, or is about to commit a crime." *United States v. Willy*, 40 F.4th 1074, 1080 (9th Cir. 2022) (quoting *United States v. Valencia*, 24 F.3d 1106, 1108 (9th Cir. 1994)).

Here, whether officers had probable cause to arrest Johnson presents a jury question. On the one hand, there are some facts that suggested the absence of probable cause, because they supported "mere suspicion, common rumor, or even strong reason to suspect," but did not necessarily rise to the legal standard for probable cause. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008) (quoting *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984)). Some of the bases on which the Defendants attempt to claim probable cause are not supported by the record. For example, although the Defendants contend that Johnson had no plans for where to stay for the night, Johnson *did* express that they were going to obtain a hotel room. Other explanations, such as Johnson's children being up late that night (the incident occurred around 9:00 pm) and one of her children wearing short sleeves on a night when the temperature was in the 50s, are by themselves not sufficient to meet the legal standard for probable cause for an arrest for child endangerment or public intoxication. Additionally, although Johnson was understandably upset at times while interacting with the police officers, it is not apparent from the videos, when viewing the evidence in the light most favorable to Johnson as required under FRCP 56(c), that Johnson is intoxicated, and she generally responded to the officers' requests in a coherent way.

On the other hand, there were other facts, even when viewed in the light most favorable to Johnson, that suggest

Defendants may have had probable cause to arrest Johnson. First, for example, at least one officer reported the smell of alcohol on Johnson's breath, as evidenced in both the bodycam footage and the Defendants' documentation after the arrest. Second, as another example, Johnson herself admitted to having a drink at some indeterminate time earlier. Third, the family van used to transport Johnson's children was in disarray: there were unsealed bottles of alcohol in the van, potentially within reach of the children, and the car seats were not installed. Although Johnson is correct that we view the facts in the light most favorable to the nonmoving party, Johnson cannot dispute certain facts, such as her prior admission to having a drink and the presence of alcohol containers in the van.

We hold that on the record at summary judgment, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

However, under the Supreme Court's precedent, Johnson's federal claims are still subject to qualified immunity.

## B. Qualified Immunity

The two steps in the qualified immunity analysis are (1) "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). The rationale of the *Pearson* Court in changing the rigid two-step procedure adopted in *Saucier v. Katz*, 533 U.S. 194 (2001), guides our analysis in this case: "[T]he rigid *Saucier* procedure . . . sometimes results in a substantial

expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." 555 U.S. at 236-37. The Supreme Court has also made clear that we must not "define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 613 (2015)). We hold that regardless of whether there was a violation of Johnson's constitutional rights, Johnson did not show that the right at issue was clearly established at the time of the case.

We have recognized that "[i]n the context of a § 1983 action, a Fourth Amendment violation occurs when a person is arrested 'without probable cause or other justification.'" *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1164 (9th Cir. 2022) (quoting *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (*en banc*)). We also have stated that "[w]here the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate." *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003). In applying the qualified immunity analysis to claims of unlawful arrest, we have summarized the two-step qualified immunity inquiry as "(1) whether there was probable cause for the arrest; and (2) whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (emphasis in original).

We hold here that although a reasonable jury could find that Defendants lacked probable cause to arrest Johnson, the Defendants are entitled to qualified immunity because, even construing all facts in Johnson's favor, the law did not

clearly establish that probable cause was lacking. This reasonable officer standard for qualified immunity differs from the prudent person standard guiding our probable cause for arrest analysis. *See Willy*, 40 F.4th at 1080. Although officers might seem to lack probable cause under the prudent person standard, especially when we evaluate their actions *post hoc*, a reasonable officer on the ground might perceive the situation differently. An officer would not be on notice that his or her action was unreasonable unless "all reasonable officers would agree that there was no probable cause in this instance." *Rosenbaum*, 663 F.3d at 1078. In so holding, we do not put aside our responsibility to determine unlawful and unconstitutional behavior, but rather recognize the purposes for which qualified immunity exists and Johnson's failure to meet the burden required to defeat qualified immunity under Supreme Court and circuit precedent. *See Pearson,* 555 U.S. at 231 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 n.2 (1987)) (citing the need to protect government officials from the burdens associated with discovery and trial for behavior that is not clearly unconstitutional)*.*

Here, Johnson did not sufficiently show how her arrest violated a clearly established right to be free from an unlawful arrest when the undisputed evidence (under the probable cause analysis) presented before the district court does not show that every reasonable officer would be on notice that these actions were unconstitutional.

The broader availability of bodycam footage allows for prompt and accurate resolutions of motions for summary judgment. Footage that has been properly introduced into the record can eliminate ambiguities that might otherwise have precluded a grant of summary judgment. In other cases, the footage could show sufficient evidence of police misconduct that could prevent a grant of summary judgment

in favor of the Defendants.  In this case, the bodycam footage verifies Johnson's claim that she did not admit to being drunk, but the bodycam footage also makes clear that Johnson did tell a police officer that she had had a mixed drink earlier in the day and that was reinforced by the contemporaneous observation by a police officer that Johnson smelled like alcohol.  Additionally, the existence of unsealed alcohol containers in the car, which Johnson similarly does not dispute (focusing instead on the location of the bottles), weighs heavily against Johnson.  These facts, in addition to the other facts indicated above in the previous section on probable cause, support the Defendants' assertion that no clearly established law prevented the officers from believing Johnson was in violation of either California Penal Code § 647(f) prohibiting public intoxication or California Penal Code § 273a prohibiting child endangerment.

Johnson did not adequately identify cases that indicated that the Defendants' actions in arresting Johnson were clearly prohibited.  As the Supreme Court has stressed, "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Kisela*, 138 S. Ct. at 1153 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014)).

The cases that Johnson cites, namely *Rosenbaum v. Washoe County*, 663 F.3d 1071 (9th Cir. 2011), are inapposite and relying upon them would violate the Supreme Court's mandate that rights should not be defined at a high level of generality.  In *Rosenbaum*, we held that a reasonable officer could not have found the plaintiff's actions to be outlawed under an unambiguous statute that did not criminalize the acts in question, and therefore reliance on the

reasonable officer standard was inappropriate. 663 F.3d at 1078-79.  However, the actions and other facts identified by the Defendants in support of their probable cause analysis arguably could support probable cause, and a plain reading of the public intoxication and child endangerment statutes does not demonstrate that a reasonable officer should have known that Johnson's actions were clearly not prohibited. The other cases Johnson cites involve fact patterns related to a child's removal from a home, which is a situation not present here. *See, e.g.*, *Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1295 (9th Cir. 2007).  We hold that in the absence of any other cases that would place Defendants on notice that their actions were unreasonable or other arguments such as those advanced by the plaintiffs in *Rosenbaum* regarding the inapplicability of statutes in question to Johnson's specific circumstance, qualified immunity must apply to the Defendants for their federal claims.

Because we hold that qualified immunity applies in the context of either the child endangerment or public intoxication statutes, that determination is sufficient to resolve Johnson's § 1983 claims.  It is not necessary to analyze the resisting, delaying, or obstructing a peace officer statute under California Penal Code § 148(a)(1).

However, because we conclude there is a jury question as to whether Defendants had probable cause to arrest Johnson, we vacate the district court's grant of summary judgment on Johnson's state law false arrest and negligence claims, which were premised on a finding that probable cause existed as a matter of law.[1] *See Johnson v. Bay Area*

---

[1] We affirm the district court's grant of summary judgment on Johnson's intentional infliction of emotional distress, Bane Act, and trespass to

*Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013) ("[T]he doctrine of qualified immunity does not shield defendants from state law claims."). We remand the vacated state law claims to the district court for proceedings consistent with this ruling.[2]

## C. The Motion to Disqualify or Recuse Magistrate Judge Kim

To prevail on a motion to disqualify a judge, the party filing the motion must show extrajudicial bias or prejudice.[3] We review the district court's decision for abuse of discretion. *Thomassen v. United States*, 835 F.2d 727, 732 (9th Cir. 1987).

The Defendants, in the course of discovery, produced videos of the incident and proposed to designate the videos

---

chattels claims. Defendants argue those claims can be rejected on alternative grounds unrelated to probable cause. We conclude those alternative grounds are supported in the record. The trespass to chattels claims fails because of Johnson's failure to comply with the California Government Claims Act, Cal. Gov't Code §§ 900 *et seq*, or alternatively, under the community caretaker doctrine. The Bane Act claim fails because Johnson did not show that officers had the requisite specific intent. The IIED claim fails because the officers' conduct was not extreme or outrageous.

[2] Although the partial concurrence and partial dissent disagrees with our treatment of the state law claims, we note that the district court had already exercised its discretion to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(c) (stating that the "district courts *may* decline to exercise supplemental jurisdiction") (emphasis added). The state law claims are therefore properly before us, and we can review the merits of these claims.

[3] The language of one of the applicable statutes, 28 U.S.C. § 455(a), covers both actual bias and the appearance of bias or prejudice. *See Liteky v. United States*, 510 U.S. 540, 548 (1994).

as confidential, while Johnson contended that the bodycam footage should be freely available to the public. Judge Kim granted a confidentiality designation for all parts of the footage showing the children. Judge Kim acknowledged that while she had not reviewed all bodycam footage, she was open to potentially revising the confidentiality designations in the future. Judge Kim wrote, "The minor Plaintiffs may suffer embarrassment or harm if these images are shown in the public, as images once made public cannot be recalled, and the failure of the minor Plaintiffs' parents to protect them from this harm is disturbing." Johnson challenged the portrayal of her actions as "disturbing," and filed another motion to recuse or disqualify Judge Kim. That latter motion was randomly reassigned to Judge Donato, who denied the motion, viewing Judge Kim's statement as appropriate in context because of Judge Kim's responsibility to safeguard the well-being of minor children. *See Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (detailing the "special duty" of a district court "to safeguard the interests of litigants who are minors").

We affirm the district court and hold that Judge Donato did not abuse his discretion in denying the recusal motion. There is no proper basis to require recusal.

## IV.  Conclusion

We affirm the district court's grant of summary judgment to the Defendants on Johnson's federal claims on the basis of qualified immunity. We also affirm the district court's grant of summary judgment on some of Johnson's state law claims (the Bane Act, trespass to chattels, and intentional infliction of emotional distress claims). Because we hold that the question of whether the Defendants had probable cause is properly one for a jury, we vacate the

district court's grant of summary judgment on Johnson's state law claims of negligence and false arrest and imprisonment.  On remand, as there is no longer any federal claim in this case, the district court may determine, using its sound discretion, whether to retain supplemental jurisdiction over the remaining state law claims or to remand this case to state court. 28 U.S.C. § 1367(c); *see Arroyo v. Rosas*, 19 F.4th 1202, 1210 (9th Cir. 2021) (quoting the statute and applying the abuse of discretion standard to evaluate the district court's decision to decline to exercise supplemental jurisdiction).  We also affirm the district court's denial of the recusal motion.  Each party shall bear its own costs.

**AFFIRMED in part, VACATED in part, and REMANDED for proceedings consistent with this opinion.**

Rawlinson, Circuit Judge, concurring in part and dissenting in part:

I join my esteemed colleagues in concluding that the officers in this case were entitled to qualified immunity.  However, I disagree with my colleagues' treatment of the state law claims.  Rather than vacating the district court's grant of summary judgment on some state law claims and affirming the grant of summary judgment on other state law claims, I would vacate the district court's grant of summary judgment on the state law claims in its entirety.  I would then remand for the district court to decide, in the first instance, whether to continue to exercise supplemental jurisdiction over the state law claims.

This approach has strong support in our precedent.  In *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1258 (9th Cir. 2016), the plaintiff alleged claims for wrongful discharge under state law and "a variety of other state law claims."  She also alleged "that her First Amendment rights were infringed, [and] that she was retaliated against for exercising such rights."  *Id.*  The claims were initially filed in Washington state court.  *See id.*  Following removal to federal court and discovery, the federal district court granted summary judgment in favor of the defendants on the state law claims.  *See id.*  On appeal to this court, the plaintiff "contend[ed] that the district court improperly granted summary judgment on her claim under Washington law for wrongful discharge against public policy."  *Id.* at 1265.  Because an intervening decision of the Washington Supreme Court had overruled the decision upon which the federal district court relied in granting summary judgment on the wrongful discharge claim, we vacated that ruling.  *See id.*  We remanded to the district court for consideration of the wrongful discharge claim in light of the intervening decision from the Washington Supreme Court.  *See id.*  However, because "we affirm[ed] the district court's grant of summary judgment with respect to [the plaintiff's] claim under federal law," we concluded that "the district court should *first* consider whether to continue to exercise its supplemental jurisdiction" over the state law claim.  *Id.* (citation omitted) (emphasis added); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) ("[W]e emphasize that actually exercising discretion and deciding whether to decline, *or to retain*, supplemental jurisdiction over state law claims . . . is a responsibility that *district courts* are duty-bound to take seriously. . . .") (citation omitted) (emphases added).

The majority's decision remands the state law claims to the district court without "first" allowing the district court to consider whether to continue to exercise its supplemental jurisdiction over the state law claims. *Coomes*, 816 F.3d at 1265. Because the majority's approach usurps the discretionary authority of the district court to decide "whether to continue to exercise its supplemental jurisdiction," *id.*, I respectfully dissent from that portion of the majority opinion.[1]

---

[1] The majority concludes that the state law claims are properly before us because "the district court had already exercised its discretion to exercise supplemental jurisdiction over the state law claims." *Majority Opinion*, p. 23 n.2. But the district court has not had the opportunity to exercise its discretion to determine "whether . . . to *retain supplemental jurisdiction* over state law claims" following remand. *Acri*, 114 F.3d at 1001 (citation and punctuation omitted) (emphasis added); *see also Coomes*, 816 F.3d at 1265 ("[T]he district court should *first consider whether to continue to exercise its supplemental jurisdiction"* over the state law claim.) (citation omitted) (emphasis added).